FRANKLIN H. WHITNEY, Plaintiff in Error, *v.* TRUMAN ROBERTS, Defendant in Error.

ERROR TO STARK.

Where a party, by the use of fraud and deception, obtains a conveyance, the parties who have made it, may disregard it and convey to a third party, who may establish the fraud in equity, and be protected in his rights.

So long as the parties defrauded, do not ratify the act done by them, they or their grantees will be sustained in their equitable rights.

THE facts upon which the decree in the court below is reversed, are stated in the opinion of the court. The bill in the Circuit Court was dismissed by POWELL, Judge, on bill, answer, exhibits and testimony, at April term, 1857, of the Stark Circuit Court.

N. H. PURPLE, for Plaintiff in Error.

M. SHALLENBERGER, for Defendant in Error.

WALKER, J. The evidence in this case shows that defendant in error procured a conveyance from the Austins for the premises

in controversy. That they were the heirs of the patentee. That defendant in error represented to them that he was the owner of the title to the land, but by the loss of a portion of his title papers, it would render it necessary to proceed by suit in equity to correct the defect, unless they would obviate the necessity by conveying the land to him. That their uncle, Reuben Scriptor, had agreed to procure a conveyance of the land from them to him, and pretended to read a letter from Scriptor to one of the Austins, urging him to convey the land to defendant. Scriptor testifies that he had not agreed to procure their conveyance to defendant, but on the contrary had refused to do so before defendant had seen the Austins. He also represented to them that the land was of little value, to one not more than one dollar and twenty-five cents per acre, and to the other that the tract was not worth more than seventy-five dollars. These facts appear from the evidence of Thomas and Charles Austin, the common grantors of both the complainant and defendant in this case. Their evidence is corroborated by that of other witnesses. They likewise swear that they would not have made this conveyance to defendant if they had known the facts as they existed, and that they were not aware that they were owners of any interest in this land, until defendant applied to purchase. Charles testified that defendant paid him only a three dollar bill, which was pronounced worthless at a bank, and the evidence shows that Thomas received but five dollars, as the consideration for the conveyances, made by them to defendant. Charles also testifies that he was induced to make the conveyance to save his uncle from trouble. The defendant exhibited papers which he represented to be deeds to himself for this land, averred he was the owner, and threatened to institute legal proceedings, unless they should convey to him. Upon this evidence, the court below dismissed complainant's bill, from which decree he brings the case to this court and asks its reversal.

This evidence we think clearly establishes a case of fraud, on the part of defendant. Here were parties wholly ignorant of the fact that they owned this land, who are applied to for a deed to confirm what was represented to be an equitable title, and are threatened with legal proceedings in case of refusal, and when time for inquiry is requested, he becomes more urgent, and pretends to read from a letter from their uncle, requesting them to convey. When in fact he had no title, but a conveyance by an attorney in fact of the patentee, the power having been executed before the patent was issued, was by the act of Congress absolutely void, and there is nothing in the record by which it appears the conveyance made under it, had ever been confirmed in any manner by the patentee. Scriptor denies that he ever

agreed to procure a conveyance by the Austins to defendant, but had refused to do so, before he applied to them to purchase, and from this statement it may be reasonably inferred he had not written him any letter advising them to convey. And he pays to one of them, only a worthless three dollar bill, and to the other five dollars, and all of this is done by him, knowing that they were acting in ignorance of their rights, an ignorance which he had been the sole instrument in producing. They relied upon him for information, and in giving it, he conceals facts which he should have disclosed, and made statements which the evidence shows not to have been true. These statements must have been made with the design of defrauding them, and they relied upon their truth when he made them, and were misled and induced to make these conveyances. His conduct in the whole transaction seems to be marked with a want of good faith. When he undertook to give them information touching their rights, he should have done so truly, without concealing any material fact. While it might be, that no one fact in the case, would of itself and unsupported by other circumstances, be sufficient evidence of fraud, all the circumstances when taken together, induce an irresistible conviction, that the transaction was fraudulent. And being so, the conveyances thus procured were void, unless subsequently ratified by the grantors. And in this case we find no evidence of such ratification. But on the contrary, their subsequent conveyance to complainant, shows that they regarded these conveyances to defendant as having no binding effect.

When they made the conveyance to complainant, they, as far as it was in their power, by their own acts, disaffirmed their former conveyances to defendant. And by the latter conveyance, they transferred to complainant all the rights which they held in the property. Before it was made they had the equitable title, and by applying to a court of chancery could have compelled defendant to reconvey to them, and complainant by the conveyance to him, succeeded to the same rights. *Choteau* v. *Jones*, 11 Ill. R. 300.

In cases of fraud, whatever shape it may assume, concealed and disguised as it may be, when discovered, equity will render the transaction void. Fraud, covin, collusion and deceit, are often used as synonymous terms, and it is said in whatever shape it appears, it is always odious in the eye of the law. And it may be laid down as a general rule, that all fraud and deceit, by which a person is deprived of his rights, renders the act void. And courts of equity have gone so far as to hold, that if an instrument be obtained from persons ignorant of their rights, but whose rights are known to the party obtaining the instrument,

they will relieve, even though no fraud or imposition has been practiced.

The rule as stated by Chitty in his work on Contracts, p. 527, is believed to be recognized as correct by all courts. He says, "Fraud avoids a contract *ab initio*, both at law and in equity, whether the object be to deceive the public, or third persons, or one party endeavors thereby to cheat the other. For the law will not sanction dishonest views and practices, by enabling an individual to acquire through the medium of his deception, any right or interest." And courts of equity from their organization and large powers, in cases of fraud, have given the relief which will do complete justice amongst all the parties in interest. And in cases of conveyances, obtained by fraud, may decree that they may be canceled, or that the party holding under them shall convey to the party entitled to the property, as may best promote justice and protect the rights of the parties.

The court manifestly has jurisdiction to give full relief, and erred in not decreeing the relief prayed by the bill and established by the proofs. The decree of the court below must be reversed and the cause remanded, with directions to enter a decree in conformity to this opinion.

*Decree reversed.*