Syllabus.

## THERON S. NORTON

*v.*

## FREDERICK TUTTLE *et al.*

1. POWER OF ATTORNEY—*dismissal of suit.* Where a party gives to another a power of attorney, which recites that the maker is indebted to the attorney, authorizing him to file a bill to set aside a conveyance made by the guardian of the maker of the power, and to compel the guardian to account, and, out of the proceeds realized from the suit, the attorney should be paid: *Held,* that after such a suit is commenced in the name of the person giving the power, he may dismiss the suit notwithstanding the opposition of the attorney.

2. EQUITABLE ASSIGNMENT. The bare right to file a bill in equity growing out of the perpetration of a fraud on a party, is not assignable, being contrary to public policy and savoring of the character of maintenance. Neither is the right of action for a tort assignable. The assignor must have a substantial right, and not a mere naked right, to overset a legal instrument, or to maintain a suit. The assignment, under such circumstances presented by this case, must be regarded as void and against public policy.

3. SAME—*power of attorney.* Where a claim of this character is not assignable, the giving of a power of attorney by the holder of the mere naked right to his creditor, authorizing suit to be brought and prosecuted in his name, the claim not being assignable, confers no rights on the attorney in fact, and therefore nothing upon which to found a claim of an irrevocable power to prosecute the suit. The position of the attorney is less favorable than if he were assignee.

4. EQUITABLE JURISDICTION. As to the question of jurisdiction of a court of equity, the case of *Whiting* v. *Roberts,* 22 Ill. 381, considered and distinguished.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. J. H. KNOWLTON and Mr. S. W. FULLER, for the appellant.

Messrs. GOODRICH & SMITH, for the appellees.

Mr. JUSTICE SHELDON delivered. the opinion of the Court:

This was an appeal from an order of the circuit court of Cook county, dismissing a bill in chancery on motion of the complainant in the bill, the appellant.

It is insisted that the action of the circuit court in dismissing the bill was erroneous, because of the interest which one William F. Camp had acquired in the subject matter of the litigation, under a power of attorney executed to him by the appellant, Norton, on the 27th of May, 1869, and Camp takes the appeal in the name of the complainant.

The power of attorney recited that the appellant was one of the lawful heirs of Theron Norton, who deceased on or about the 24th day of April, 1844, and of Minerva M. Norton, who died on or about the 16th day of October, 1859, and that his interests in the estates of the decedents were wrongfully withheld from him by Frederick Tuttle, who claimed the ownership of the same under a certain conveyance made on the 25th of June, 1860, which was obtained through misrepresentation and the exercise of undue influence over the appellant by Tuttle, and that the appellant was desirous of securing an accounting of the guardianship by said Tuttle of the estate and of the management of said interests, and the complete recovery and possession of said interests.

It was also recited in the power of attorney that, "the appellant was justly indebted to William F. Camp for money obtained from him by the appellant upon certain promissory notes, upon some of which the appellant was holden as indorser thereof, and upon the other of said notes he was holden and bound as the maker of the same, and for the purpose of securing the payment of the money and interest thereon at the rate of ten per cent per annum until the money and interest should be fully paid, and for the purpose also of securing said William F. Camp for his time, trouble and all expenses which he had incurred and which he might thereafter incur in and about the matters and business intrusted to him by said power

of attorney, including attorney's fees and counsel fees and charges, and for the other purposes mentioned therein;" and therefore the power of attorney further proceeded to authorize Camp, as the attorney of the appellant, to institute every and all necessary proceedings to secure an accounting and for the recovery of all and every interest which he had had or might now have in the estate of Theron and Minerva M. Norton, and when so accounted for and recovered, to take possession of the same, and to execute contracts, leases and all necessary writings pertaining thereto, collect all rents, etc.

Through the procurement of Camp, the bill was prepared, and was filed January 25th, 1870.

The bill alleges the appointment of Tuttle as guardian of the complainant and his sister Minerva M.; that Tuttle, while such guardian, under an order of sale by the county court of his ward's lands, fraudulently made sale of, and acquired for himself a deed to, one certain lot of land of his wards; that, by fraud and undue influence, he obtained from his said wards conveyances of two certain other lots of land.

The bill also alleges that Tuttle never accounted with the complainant or said Minerva M. concerning his guardianship, or for any of the moneys received by him as proceeds of their estate; that he claims to hold two of said lots by virtue of the conveyances to him, and has received a large sum in rents and profits. The death of the said Minerva M. is alleged, and that complainant is one of her heirs. The bill prays for an account, and that the alleged fraudulent conveyances be set aside, and the lots be reconveyed to complainant.

Tuttle left this country for Europe, in July, 1869, and was absent over a year, and, upon his return, was served with a summons in this suit on the 11th day of August, 1870.

On the 27th day of January, 1870, two days after the bill was filed, Norton filed in the cause a written stipulation, signed by him, consenting that the suit be discontinued.

Without entering into the particulars of the several affidavits and documents filed in support of the motion to dismiss,

we deem it sufficient to say that the complainant not only did all in his power to dismiss his own bill, but he placed upon record a detailed statement showing that he had no case upon the merits.

Two days after the suit was commenced, he filed a stipulation in writing, signed by himself, consenting to its dismissal. On the 22d of August following, he made an affidavit stating his reasons for filing the stipulation, and insisted upon the dismissal of the suit pursuant to his stipulation. Again, on the 9th of September he made another affidavit, explaining how the suit came to be commenced, and stating in detail facts and circumstances, showing that he had no claim against Tuttle, and that the suit never ought to have been commenced.

And finally, on the 23d of December thereafter, in a still further affidavit, he again repeated that he desired and asked that his suit be dismissed.

These repeated affidavits and declarations would seem to have been thought necessary, by the efforts of Camp, to proceed with the prosecution of the case, despite of Norton's wishes, and to meet matters set up in affidavits on behalf of Camp.

We deem it unnecessary to consider the questions, whether there was any actual indebtedness on the part of Norton to Camp, or whether the power of attorney was executed by Norton under such circumstances as not to be binding upon him, for, in the view we take, conceding the existence of the indebtedness, and the valid execution of the power of attorney, we can not admit the right of Camp to carry on the prosecution of this suit against the will of Norton.

The claim of such right is rested on the ground that the alleged liability on the part of Tuttle to Norton, amounted to a legal or equitable estate, in which Camp had acquired an interest by virtue of the power of attorney, and which he had a right to have investigated for the purpose of securing out of the proceeds of the litigation the payment of any indebtedness from Norton to him, and which the power of attorney was made to secure.

There are authorities of the highest respectability, that such a claim as is set forth in this bill is not assignable in equity. Story, in his Equity Jurisprudence, vol. 2, sec. 1040 · g, says: "So an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor, will be held void, as con ·trary to public policy, and as savoring of the character of maintenance. So, a mere right of action for a tort is not, for the like reason, assignable. Indeed, it has been laid down as a general rule, that where an equitable interest is assigned, in order to give the assignee a *locus standi in judicio* in a court of equity, the party assigning such right must have some sub stantial possession, and some capability of personal enjoyment, and not a mere naked right to overset a legal instrument, or to maintain a suit." Spence, in his treatise on Equitable Juris diction, vol. 2, 868, speaking upon the same subject, lays down· the rule in the following language: "A right which can only produce property by means of a successful litigation, is not a subject which, generally speaking, the court will recognize as property for the purposes now under consideration," (capability of assignment); and further on: "But a right to avoid the effect of a legal instrument on equitable grounds—for instance, to set aside a release obtained by fraud, though there may be the strongest grounds for presuming that the litigation will be successful—is not such a possibility, or such a chose in action, as can be assigned, even in the view of the court of chancery; it is only by litigation that the right can be constituted, and the property acquired."

In *Prosser* v. *Edmunds*, 1 Younge & Coll. 481, one of the cases cited by both Story and Spence, in support of the doc trine they lay down, Lord ABINGER examined the subject at large, wherein he said: "All our cases of maintenance and champerty are founded on the principle that no encouragement should be given to litigation by the introduction of parties to enforce those rights which others are not disposed to, enforce. There are many cases where the acts charged may not amount precisely to maintenance or champerty, yet of which, upon

general principles, and by analogy to such acts, a court of equity will discourage the practice." * * * * "Robert Todd, when he assigned, was in possession of nothing but a mere naked right. He could obtain nothing without filing a bill. No case can be found which decides that such a right can be the subject of assignment, either at law or in equity."

Within the principle of the authorities cited, we must regard the subject matter of the controversy in this suit as not assignable, and that any attempted assignment of it should be held void, as contrary to good policy.

If not assignable, then Camp could acquire no interest in it by way of security for any indebtedness of Norton to him, and there would be nothing upon which he could found the claim of an irrevocable power of attorney, entitling him to take from Norton the control of the suit, and to persist in its prosecution in the name of the latter against his will, and in the face of his sworn statement placed upon the record, that he has no claim whatever against Tuttle.

The position of Camp is less favorable than if he were an assignee of the subject of the suit.

Nothing has been assigned to him, but he has merely a power of attorney to prosecute this litigation, and, out of the fruits of it, to reimburse himself for his expenses, and repay an indebtedness to him, as recited in the power, with no mention of its amount.

The litigation, if pursued, promises to be involved, vexatious and prolonged. Norton insists that it is groundless, regrets that it was instituted, and desires to drop it. But Camp, a stranger, claims the right, by virtue of this power of attorney, to intermeddle in the suit, and compel its prosecution in the name of the complainant, contrary to his will, against his step father, Tuttle, the bill containing various aspersions upon the character of the latter, and the natural result of which litigation must be to embroil this family and disturb its peace. It is desirable that parties should have the full liberty of amicably adjusting their suits in court, and the interference with it, as

set up in this case, seems opposed to the best interests of society.

If Camp supposes that he has any equitable interest in the subject matter of the suit, he can file his own bill, and litigate in his own name, and if he deems Norton a necessary party, make him a party defendant.

We must hold that the fact of the execution of this power of attorney did not divest Norton of the control of the suit, and that he might, notwithstanding the power of attorney, dismiss his own suit.

We do not regard the view here entertained as conflicting with the decision in *Whitney* v. *Roberts*, 22 Ill. 381, upon the authority of which case the counsel for Camp relies. There, a grantor, from whom a deed of land had been procured by fraud, made a subsequent conveyance of the land to another, and the subsequent grantee was allowed to maintain a bill in his own name, to set aside the prior deed which had been fraudulently obtained by the first grantee. There was a conveyance of land, the prior fraudulent deed was void, and it was the common case of the owner of land filing a bill in his own name, to remove a cloud from his title.

Here is no conveyance of any thing—but only a power of attorney; the suit respects not only the fraudulent disposition and obtention of lands of the ward, but it involves the accounting on the part of a guardian of the management of his wards' estate, and it is the claim of an attorney in fact to take from the principal the control of his own suit, and carry it on in the name of the latter, despite his will to the contrary.

The cases are wholly distinguishable.

We do not perceive how the court below could have done otherwise than to dismiss the bill, and its order of dismissal is affirmed.

*Decree affirmed.*