(No. 10912.—Reversed and remanded.)
CHARLES H. WARNER *et al.* Plaintiffs in Error, *vs.* CHARLES
W. FLACK *et al.* Defendants in Error.

*Opinion filed April 19, 1917—Rehearing denied June 6, 1917.*

1. ATTORNEY AND CLIENT—*what contract.is void as contrary to
public policy.*  A contract between attorney and client whereby the
attorney agrees to render his services in controlling or advising
with a relative of the client so as to prevent her from disinherit-
ing him and to secure by such means a.portion of her property for
the client is void, as contrary to public policy.

2. SAME—*rule where attorney purchases property from client.*
Where an attorney purchases property of his client, it is not nec-
essary, in order to avoid the conveyance, to show fraud or impo-
sition but the burden is on the attorney to show perfect fairness,
adequacy and equity in the transaction, and upon his failure to
make such proof a court of equity will treat the case as one of con-
structive fraud.

3. FRAUD—*heirs may maintain a bill to set aside a deed obtained
by fraud.*  In Illinois the right of a grantor to repudiate a convey-
ance for fraud descends to his heirs and may be exercised by them
whether the fraud is actual or constructive, and a bill by heirs of a
grantor alleging that the defendants, while acting as the attorneys
of the grantor, acquired a conveyance of his property.by undue in-
fluence and for an inadequate consideration, requires answer and
proof by the defendants.

4. DEEDS—*wife joining in conveyance of husband's property is
not bound by covenants.*  A wife who has nothing but an inchoate
right of dower in her husband's property does not, by joining in a
warranty deed to his land and in an assignment of his interest in
personal property, become bound by the covenants of warranty con-
tained in such instruments.

5. EQUITY—*bill to set aside deed should offer to return the con-
sideration, with interest.*  A bill by heirs to set aside a deed of their
ancestor to his attorneys for constructive fraud should offer to re-
turn the actual cash consideration, with interest.

6. PLEADING—*law presumes intestacy in absence of allegations
to the contrary.*  In alleging title by descent it is not necessary to
allege intestacy of the ancestor, as such intestacy is presumed in
the absence of allegations to the contrary, and even though the an-
cestor left a will it will be presumed that his heirs took his land
until the proof shows that the will was executed so as to pass real

estate and that its contents were inconsistent with the claim of the heirs.

7. SAME—*what is a sufficient allegation of the title of the heirs.* An allegation that a person acquired title to land and that he died leaving heirs is a sufficient allegation of the title of the heirs, and it is no more necessary to allege that he died without having executed a will than that he died without having executed a conveyance of any other kind.

WRIT OF ERROR to the Circuit Court of McDonough county; the Hon. H. M. WAGGONER, Judge, presiding.

MILLARD R. POWERS, (JAMES L. CLARK, of counsel,) for plaintiffs in error.

CHIPERFIELD & CHIPERFIELD, (CHARLES W. FLACK, and JOHN C. LAWYER, of counsel,) for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiffs in error, Mary A. Warner, Charles H. Warner and John C. Warner, filed a bill against the defendants in error, Charles W. Flack and John C. Lawyer, in the circuit court of McDonough county, to which the court sustained a demurrer, and the complainants sued out a writ of error to reverse the decree, which dismissed their bill for want of equity.

The bill alleged that Mary M. Harris prior to November 1, 1910, was possessed of certain real estate in McDonough county, together with upwards of $50,000 in money, notes and mortgages; that John S. Warner was her brother, the husband of the complainant Mary A. Warner, the father of the complainant Charles H. Warner and the grandfather of the complainant John C. Warner, who was a son of a deceased son of John S. Warner; that seeking to prevent his sister from disinheriting him he employed the defendants, Flack and Lawyer, who were attorneys at law and partners, and entered into a written contract with them whereby they engaged to render all legal services necessary

or that might be required in controlling or advising with Mrs. Harris, or in prosecuting any suit or suits for the appointment of a conservator, or the setting aside of the will or any other legal document, or prosecuting any legal proceeding that might be necessary to secure the rights and interests of the said John S. Warner in and to the property of the said Mary M. Harris, whether said proceeding might be taken before her death or after her death, the compensation of the defendants to be one-third of whatever might be collected from the estate of Mrs. Harris; that the services so agreed to be rendered were continuous until after the death of Mrs. Harris, which occurred on September 7, 1915, and in part performance of their contract of employment the defendants procured from Mrs. Harris a trust deed conveying to James C. Hammond, trustee, her real estate, worth about $45,000, and money and securities amounting to about $51,000, to hold for the benefit of Mrs. Harris during her lifetime and after her death for the use of certain other relatives, among them John S. Warner, whose proportion was to be one-seventh, which was worth about $14,000. Afterward, and while the said contract of employment was in full force, the defendants obtained from John S. Warner and his wife a warranty deed of all his interest in all of said real estate, and also an assignment of all his interest in and to all the real estate and personal property which he had acquired or might become entitled to under the said trust deed, the defendants taking the property in the proportion of one-third to Lawyer and two-thirds to Flack. This instrument also purported to convey to the defendants all property that John S. Warner might inherit from Mrs. Harris or become entitled to by virtue of his relationship to her, and constituted the defendants his attorneys, in his name but for their sole benefit, to recover and receive all the lands and moneys that might become due and owing to the said John S. Warner from Mary M. Harris or James C. Hammond, the trustee in the said deed of

278 – 20

trust, and any lands or moneys that John S. Warner might inherit from Mrs. Harris or become entitled to by virtue of his relationship to her.

While the consideration expressed in the said deed was $6000 and in the said assignment $10,000, the actual sum paid by the defendants was only $3500 for both of said conveyances, the defendants well knowing that the one-seventh part of said estate was worth at least $14,000. The relation of attorneys and client then existed between the said defendants and John S. Warner, who was eighty-six years of age and was in a condition of mind to be easily influenced by his attorneys, and by reason of that relationship and the confidence reposed in said attorneys, and the inadequacy in the price paid him by the defendants, the said conveyances are fraudulent and void and should be set aside.

John S. Warner died on June 12, 1914, leaving the complainants, his widow and only heirs-at-law. After the death of Mrs. Harris the defendants filed their bill in the circuit court of McDonough county for the partition of her estate, claiming the entire interest of the said John S. Warner, and the complainants, who were not made parties to the suit, filed a petition to be allowed to intervene and be made defendants, but the court refused to grant the petition and rendered a final decree adjudging that the defendants and the other persons (except John S. Warner) who were mentioned in the trust deed as beneficiaries were the owners of said estate as tenants in common. The complainants offered to re-pay the $3500 paid by the defendants to John S. Warner, and prayed that the deed and assignment from him to the defendants be decreed null and void and that it be decreed that the defendants have no interest in the property of the estate of Mary M. Harris, deceased, but that all interest which would have passed to John S. Warner had he survived the said Mary M. Harris is now vested in the complainants.

The contract for services to be rendered for the purpose of controlling or advising Mrs. Harris so as to prevent her from disinheriting her brother, and to secure by such means his rights and interests in her property, was contrary to public policy. All such contracts are clearly void, for they tend to the deceit and injury of third persons and encourage artifices and improper attempts to control the exercise of their free judgment in the disposition of their property. (Story's Eq. Jur. sec. 265.) No relief is asked in respect to this contract.

The procuring of the conveyances to the defendants from their client was an independent transaction, entered into after the trust deed had been obtained. The demurrer admits that during the existence of the relation of attorney and client the defendants purchased their client's property. In such case it is not necessary to show fraud or imposition on the client, but the burden is thrown upon the attorney of proving the perfect fairness, adequacy and equity of the transaction, and upon his failure to make such proof a court of equity will treat the case as one of constructive fraud. (*Mansfield* v. *Wallace,* 217 Ill. 610; *Willin* v. *Burdette,* 172 id. 117; *Zeigler* v. *Hughes,* 55 id. 288; *Elmore* v. *Johnson,* 143 id. 513.) The bill therefore showed a good cause of action in John S. Warner, in his lifetime, to set the conveyance aside.

The defendants in error insist that this cause of action did not survive to the heirs of John S. Warner. Under the common law most personal actions were held to abate. Statutes passed from time to time have increased the number which survive, so that in this State the case is reversed and most causes of action now survive, including all actions for fraud or deceit. The rule has no application to cases of equitable cognizance, for remedies administered in equity do not die with the person.

The defendants in error argue that when they procured the deed from their client the title to the property passed

to them; that the deed was not void but voidable only; that the right to have it set aside was personal to the grantor and could not be exercised by his heirs. *Rickman* v. *Meier,* 213 Ill. 507, gives a complete answer to this contention. It is parallel in its facts to this case, the confidential relation existing in that case being that of parent and child. In regard to the same contention made here the court said: "The law is that where a deed or other conveyance has been procured by undue influence, if it be not ratified by the party making it after the undue influence has ceased to operate, it may be set aside after his death at the suit of those who succeed to his rights.—Bigelow on the Law of Fraud, p. 268; *Walker* v. *Smith,* 29 Beav. 394; *LeGendre* v. *Goodridge,* 46 N. J. Eq. 419; *Lins* v. *Lendhardt,* 127 Mo. 271; *Prentice* v. *Achorn,* 2 Paige, 30; *Martin* v. *Bolton,* 75 Ind. 275." *Lewis* v. *McGrath,* 191 Ill. 401, is another case essentially like the present. The deed was set aside at the suit of the grantor's heirs, and though their right to maintain the bill is not discussed in the opinion, the existence of such right was necessary to the relief granted. Again, in *Ross* v. *Payson,* 160 Ill. 349, conveyances of real estate by a client to his attorney were set aside at the suit of the heirs solely on the ground that the defendant had failed to establish the fairness, adequacy and equity of the conveyances, though the evidence failed to show that the grantor was incapable of transacting ordinary business. It is true that these cases were decided upon evidence heard and not upon the question of pleading and that the bills alleged mental incompetency, but they were decided in each case, independently of the question of mental capacity, because of the failure of the defendant to show the fairness, adequacy and equity of the transactions. If it was unnecessary to prove mental incapacity it was unnecessary to allege it. The bill now under consideration alleges that the instruments in question were obtained by undue influence, for

an inadequate consideration. This is sufficient to require answer and proof from the defendants.

Assignability and heritability of rights are not always, though usually, co-existent. Rights may pass by descent which cannot be assigned, as the possibility of reverter after the expiration of a determinable fee, (*North* v. *Graham,* 235 Ill. 178,) or the right of re-entry for breach of a condition subsequent, (*Golconda Northern Railway* v. *Gulf Lines Railroad,* 265 Ill. 194,) though there is probably no case of a right which is assignable but will not pass by descent. Mr. Justice Story, in his Commentaries on Equity Jurisprudence, (sec. 1040*g*,) says: "So an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor will be held void as contrary to public policy and as savoring of the character of maintenance, of which we shall presently speak. So a mere right of action for a tort is not, for the like reason, assignable. Indeed, it has been laid down as a general rule that where an equitable interest is assigned, in order to give the assignee a *locus standi in judicio* in a court of equity the party assigning such right must have some substantial possession and some capability of personal enjoyment, and not a mere naked right to overset a legal instrument or to maintain a suit." To sustain this doctrine is cited the case of *Prosser* v. *Edmonds,* 1 Y. & C. 481, the leading English case, in which Lord Abinger said: "But in a case where a party assigns his whole estate and afterwards make an assignment, generally, of the same estate to another person, and the second assignee claims to set aside the first assignment as fraudulent and void, the assignor himself making no complaint of fraud whatever, it appears to me that the right of the second assignee to make such claim would be a question deserving of great consideration. My present impression is that such a claim could not be sustained in equity unless the party who made the assignment joined in the prayer to set it aside. In such a case a second assignment is merely that

of a right to file a bill in equity for a fraud, and I should say that some authority is necessary to show that a man can assign to another a right to file a bill for a fraud committed upon himself. * * * In the course of the argument it was urged that an equitable as well as a legal interest may be the subject of conveyance, and that the assignee of a chose in action may file a bill in equity to recover it although he cannot proceed at law for that purpose. But where an equitable interest is assigned, it appears to me that in order to give the assignee a *locus standi* in a court of equity the party assigning that right must have some substantial possession,—some capability of personal enjoyment,—and not a mere naked right to overset a legal instrument. * * * In the present case it is impossible that the assignee can obtain any benefit from his security except through the medium of the court. He purchases nothing but a hostile right to bring parties into a court of equity as defendants to a bill filed for the purpose of obtaining the fruits of his purchase. * * * Robert Todd, when he assigned, was in possession of nothing but a mere naked right. He could obtain nothing without filing a bill. No case can be found which decides that such a right can be the subject of assignment, either at law or in equity."

In *Dickinson* v. *Burrell,* L. R. 1 Eq. Cas. 337, a conveyance of an interest in an estate was fraudulently procured from Dickinson by his solicitor to a third party for the solicitor's benefit for a very inadequate consideration. Dickinson learning of the fraud made another transfer of his interest in the estate to trustees for the benefit of himself and his children, reciting in the conveyance the facts and that he disputed the validity of the first conveyance. The trustees filed a bill to set aside the first conveyance upon the re-payment of the consideration money and interest and to establish the trust. The master of the rolls in sustaining the bill said: "The distinction is this: If James Dickinson had sold or conveyed the right to sue to set aside the in-

denture of December, 1860, without conveying the property or his interest in the property, which is the subject of that indenture, that would not have enabled the grantee, A B, to maintain this bill, but if A B had bought the whole interest of James Dickinson in the property then it would. The right of suit is a right incidental to the property conveyed." In regard to this distinction we agree with what was said by the Supreme Court of California in the examination of this question in *Whitney* v. *Kelley,* 94 Cal. 146: "It is difficult to appreciate the distinction thus attempted to be drawn in the two cases. The one is an assignment of a right to acquire property by setting aside a fraudulent conveyance of it, and the other a conveyance of the property with an incidental right of setting aside the prior fraudulent conveyance." The distinction is too unsubstantial to be the basis of different equitable rights.

In *McMahon* v. *Allen,* 35 N. Y. 403, a debtor was induced by the fraud of his agent to convey his interest in his mother's estate and certain other property to the agent, to the prejudice of his creditors, for a very inadequate consideration and in ignorance of the fraud. He soon after made a general assignment of his property for the benefit of his creditors, with full power to sue for the same, and his assignees filed a bill to set aside the conveyance to the agent. The bill was sustained, the court citing and quoting at length from *Dickinson* v. *Burrell, supra,* as an accurate exposition of the law which should control the case under consideration.

In *Traer* v. *Clews,* 115 U. S. 528, Clews was the owner of $50,000 stock in a construction company, on which dividends amounting to $10,500 were declared in 1873 and 1874. He was afterward adjudicated a bankrupt, and the stock, with the dividends, passed to Tappan, his assignee in bankruptcy. The construction company went into voluntary liquidation and Traer was appointed one of the trustees to settle its affairs. Knowing of the existence of the dividends,

of which Clews and Tappan were ignorant, Traer bought the stock of the assignee. Afterward the assignee sold to Clews all claims on account of the stock, and the latter brought suit in the State court of Iowa for the value of the stock and recovered a judgment for $15,000, which was affirmed by the Supreme Court of Iowa and the Supreme Court of the United States. The latter court cites the cases of *Dickinson* v. *Burrell* and *McMahon* v. *Allen, supra,* with others, and says: "Applying the rule established by these authorities, we are of opinion that, so far as the question under consideration is concerned, the assignment from Tappan to Clews was the transfer not merely of a naked right to bring a suit but of a valuable right of property, and was therefore valid and effectual."

In section 153 of Pomeroy on Remedies and Remedial Rights, among illustrations of personal rights which cannot be assigned, is mentioned the right of a grantor to avoid his conveyance on the ground of fraud. The saying of Lord Justice Turner in *DeHoghton* v. *Money,* L. R. 2 Ch. 164, that "the right to complain of fraud is not a marketable commodity," is often quoted. The cases of *Gruber* v. *Baker,* 20 Nev. 453, *Smith* v. *Harris,* 43 Mo. 557, and *Whitney* v. *Kelley, supra,* follow *Prosser* v. *Edmonds, supra,* and there are many similar decisions. The text writers generally state, and the cases have decided, the rule that a right of action for fraud cannot be assigned at law or in equity. The decisions were based on the ground, first, that such assignments are contrary to the policy of the law against maintenance or champerty; and second, that they are contrary to the prohibition of the common law against the conveyance or transfer of property in the adverse possession of another. This prohibition no longer exists, and an absolute conveyance of property, real or personal, is not within the reason of the first ground of objection. Therefore many decisions of the courts are now found which in the application of the rule, or as an exception to it, hold that a convey-

ance of property in the adverse possession of a third person under a voidable title carries with it the incidental right of the grantor to maintain a suit in equity to set aside the voidable title. In addition to those cases which have already been referred to may be cited *Gandy* v. *Fortner*, 119 Ala. 303; *Parker* v. *Simpson*, 180 Mass. 334; *Busiere* v. *Reilly*, 189 id. 518; *Coon* v. *Dennis*, 111 Mich. 450; *Houston* v. *National Mutual Building Ass'n*, 80 Miss. 31; *Connecticut Mutual Life Ins. Co.* v. *Smith*, 117 Mo. 261; *Weissenfels* v. *Cable*, 208 id. 532; *Sommervaill* v. *McDermott*, 116 Wis. 504; *Borchert* v. *Borchert*, 132 id. 593; *Wimpfheimer* v. *Perrin*, 61 N. J. Eq. 126.

In this State the right to maintain a suit to set aside a title to land obtained fraudulently has been sustained in favor of either the heirs of the defrauded grantor or his assignee in the following cases: *Whitney* v. *Roberts*, 22 Ill. 381; *Smith* v. *Wright*, 49 id. 403; *Ross* v. *Payson*, *supra*; *Prince* v. *Dupuy*, 163 Ill. 417; *Lewis* v. *McGrath*, *supra*; *Rickman* v. *Meier*, *supra*. In some of these the right to maintain the suit was not questioned; in others it was expressly decided. In some the fraud was actual; in others constructive. There is no distinction between cases of actual fraud and those of constructive fraud. It would be a defect in the law if there were no remedy against an attorney who, having got his client's property unfairly by taking advantage of his confidence, had succeeded in retaining it by the same means until his client's death. An intending purchaser may not be required to disclose to the vendor all the facts and information he possesses in regard to the property proposed to be purchased, its value, surroundings, adaptation to certain uses and the demand for it. His failure to disclose is not deemed fraud. Precisely the same failure to disclose on the part of an attorney dealing with his client is deemed fraud. It is no less fraudulent, either in law or morals, because it is called constructive fraud. Morally the attorney's fraud may be regarded as

the baser, as the friend who treacherously betrays is baser than the enemy who overcomes in open contest. The law does not ordinarily impose the duty to disclose upon the stranger; it always does so on the attorney. The act, in either case, constituting fraud is the obtaining of the vendor's property by means which the law deems fraudulent. The law imposes upon the vendor the duty of proving the fraud committed by a stranger. Because of the advantages he possesses by reason of the confidential relation and the duties it places upon him, the law imposes upon the attorney the burden of proving that the transaction between him and his client was fair and equitable when the client claims that it was unfair and inequitable. The difference is, that in the one case the vendor must prove that the purchaser violated a duty imposed upon him by law, and in the other the attorney must prove that he performed every duty required of him by law. The rights of the parties in either case are not affected by the rule as to the burden of proof. If the defendants in error by false representations actually made and relied upon by John S. Warner had procured the instruments in question, there is no doubt but that under the uniform decisions of this court his heirs could maintain a bill in equity to set them aside. There is no rule of law which protects attorneys who have committed frauds upon their clients from the same remedies on the part of the clients' heirs.

The defendants in error rely upon the cases of *Norton v. Tuttle,* 60 Ill. 130, and *Illinois Land and Loan Co. v. Speyer,* 138 id. 137, but neither of those cases is in point. In neither was there any conveyance to the complainant or any pretense of title to the subject matter of the controversy in the complainant. In the first the holder of a power of attorney sought to control the litigation in opposition to the complainant, and in the latter, complainant's only interest in the property involved was an agreement for a conveyance to be made to it after and conditional upon its success-

ful prosecution, at its own expense, of a suit to set aside an adverse title.

It is true that the instruments in question transferred the legal title to the defendants in error, and it may be argued, as it was argued in many of the cases cited, that there was nothing left in the grantor for a subsequent conveyance to operate on or to descend to his heirs. The same argument might have been made in the cases in which this court has sustained suits by heirs to set aside conveyances obtained from their ancestors by fraud. A deed is no more void because obtained by the fraud of a stranger than if obtained by the fraud of an attorney or other person sustaining a fiduciary relation. The distinction between deeds which are void and those which are voidable is unimportant in this connection. The deed of a person who has never been adjudged a lunatic is not void, but is voidable if he was, in fact, mentally incompetent. (*Walton* v. *Malcolm,* 264 Ill. 389.) It is unnecessary to cite the numerous cases in which heirs have been permitted to maintain suits to set aside instruments executed by their ancestors on the ground of their want of mental capacity. It is not a sufficient answer to a suit by heirs to set aside a deed that the deed is voidable, only, and not void.

The cases which have been cited also dispose of the claim that the right to avoid the deed was personal and did not descend to the heirs. In those cases there was no act of the grantor repudiating the conveyances.

The defendants in error insist that the bill contains no sufficient offer to do equity. While the consideration expressed in the two instruments is $16,000 it is alleged that the actual amount paid for them was only $3500, which the complainants offer to return. It is insisted they should also return the one-third of the amount recovered from Mrs. Harris' estate mentioned in the first agreement with John S. Warner, which the defendants in error were to receive for their compensation. This amount is not mentioned as

a part of the consideration for the execution of the instruments in question, and we have already held that first agreement for the defendants in error's services to be contrary to public policy and void. It therefore imposed no liability upon John S. Warner, and the complainants were under no obligation to pay the amount mentioned in it as a condition to having the instruments in question canceled.

Defendants in error further object that Mary A. Warner has no interest in the subject matter because she joined in the warranty deed and assignment, and whatever title accrued to her upon her husband's death passed to the defendants in error by virtue of the covenants of warranty contained in those instruments. She had not even an inchoate right of dower at the time those instruments were executed, but only a possibility of becoming entitled to dower and of inheriting personal property from her husband. A wife who joins in the conveyance of her husband's property under such circumstances is not liable upon the covenants contained in the deed. *Center* v. *Elgin City Banking Co.* 185 Ill. 534.

John S. Warner had the right to repudiate these instruments in his lifetime, and that right was of such a character as to descend to his heirs. The bill stated a case which requires an answer from the defendants, but the defendants in error insist that it does not allege whether or not John S. Warner died intestate and therefore fails to show any title in the complainants. In alleging title by descent it is not necessary to allege the intestacy of the ancestor. The law presumes it in the absence of allegation to the contrary. Title to land can be acquired by two modes, only: descent and purchase,—the latter including every mode of acquisition known to the law except that by which an heir, on the death of an ancestor, becomes substituted in his place as owner by the act of the law. (2 Blackstone's Com. 241; 4 Kent's Com. 373; 3 Washburn on Real Prop. sec. 1824.) Property is presumed to descend to the heir, and the burden

of alleging and showing a title by purchase instead of descent is upon the person claiming the advantage of such title. An allegation that one acquired the title to land and afterward died leaving heirs is a sufficient allegation of the title of the heirs, and it is no more necessary to allege that he died without having executed a will than that he died without having executed a conveyance of any other kind. In the absence of proof the presumption is that a deceased person died intestate and that his heirs became the owners of all his property. (*Schmidt* v. *Brown*, 226 Ill. 590; *Sielbeck* v. *Grothman*, 248 id. 435.) Testacy is an affirmative fact, the burden of proving which rests upon the party claiming some advantage by reason of it. "It is not for the heir to prove that no one else holds as devisee or grantee from his ancestors." (*Lyon* v. *Kain*, 36 Ill. 362.) Even though the deceased left a will, it will be presumed that his heirs took his land until the proof shows that the will was executed so as to pass real estate and that its contents were inconsistent with the claim of the heirs. (*Stephenson* v. *Doe*, 8 Blackf. 508; *Baxter* v. *Bradbury*, 20 Me. 260.) In a bill by a widow to set aside a deed of her deceased husband in which she had joined during infancy and which she had afterward disaffirmed, it was held that she was not required to allege that her husband died intestate and left no testamentary provision for her as his widow. (*McClanahan* v. *Williams*, 136 Ind. 30.) In a bill by heirs to set aside a deed of their ancestor procured by fraud it is not necessary to allege that the ancestor died intestate. (*Murphy* v. *Crowley*, 140 Cal. 141.) It is unnecessary to allege a fact which the law presumes to exist. The contrary averment must be made if the fact is to be put in issue.

The decree is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*