(No. 35912.—

CHARLES A. REGNIER et al., Appellees, *vs.* CHARLES LAY, Appellant.

*Opinion filed January 20, 1961.*

ROBERT E. DOLPH, of Aurora, for appellant.

SEARS, STREIT AND TYLER, of Aurora, (MARVIN D. DUNN, and JOHN E. DREYER, of counsel,) for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The principal question in this case is whether or not a confidential relation existed between Charles A. Regnier, one of the plaintiffs, and Charles Lay, the defendant, on March 14, 1953, when Regnier conveyed a lot improved with a residence to himself and Lay as joint tenants. The circuit court found that such a relationship existed, and entered a decree which set aside the conveyance and dismissed the defendant's counterclaim for partition and an accounting. A freehold is involved, and the defendant has appealed directly to this court.

In December of 1955, more than three years after the conveyance to the defendant, Regnier executed a warranty deed which conveyed the same property to his niece, Philomene Fransen, and her husband, LaVerne Fransen, in joint tenancy, in consideration for their agreement to furnish care and support for him during his lifetime. The amended complaint was filed by Regnier and the Fransens as plaintiffs, and a preliminary question arises from the de-

fendant's attack upon their standing to maintain this action. He contends that Regnier divested himself of any interest in the property by his subsequent conveyance to the Fransens, and that the Fransens cannot be heard to complain about the earlier transaction in which they had no part. We do not agree. So far as the Fransens are concerned, a conveyance of property carries with it the incidental right of the grantee to maintain a suit in equity to set aside the voidable title of a third person. (*Feeney* v. *Runyan,* 316 Ill. 246, 249; *Warner* v. *Flack,* 278 Ill. 303, 309-313; *Whitney* v. *Roberts,* 22 Ill. 381, 383.) And in our opinion it was not error to regard the grantor as a proper party plaintiff in this action to set aside the warranty deed which he had executed. Cf. *Abernathie* v. *Rich,* 229 Ill. 412, 419.

Many grounds for relief were urged in the original and amended complaints. All have now been abandoned by the plaintiffs except the single contention that a fiduciary or confidential relationship existed between Regnier and Lay, and was breached by Lay. Such a relationship did not exist as a matter of law, and so the burden of establishing it rests upon those who seek to set aside the conveyance; "the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion." *Kolze* v. *Fordtran,* 412 Ill. 461, 468; *McCrillis* v. *Utterback,* 397 Ill. 550, 554; *Stewart* v. *Sunagel,* 394 Ill. 209, 214; *McGlaughlin* v. *Pickercl,* 381 Ill. 574, 583.

We have carefully examined the record and in our opinion the proof does not meet the required standard.

Regnier and the defendant's father were very close friends. The defendant was born on Regnier's birthday, was named for him and was treated as a member of the Regnier family. Regnier called him "Chuck or Charlie or my boy." When the defendant was married in 1949 he built a house next door to the Regniers, and for about a year, while the house was being built, he and his wife lived with the Regniers.

Regnier's wife died on or about March 1, 1953, after an illness of about a year. The conveyance in question was executed on March 14, 1953. Regnier was then 67 years old. A neighbor woman described him as being "upset emotionally" at that time and said that after his wife's death he began to smoke excessively, and "he did quite a bit of drinking," although he never became intoxicated. She also testified, "I would try to talk to him in a conversation, and his mind was just a million miles away." Regnier himself testified, however, that he continued to work steadily during this period and that while he "wasn't any too good," there was nothing wrong with him so far as his mental condition was concerned.

Lay testified that Regnier had expressed a desire to settle his affairs after his wife's death, that he wanted to make a joint tenancy and a will, and had asked if Lay knew of a lawyer. Lay suggested his father-in-law's attorney, with whom he had dealt only indirectly, but whom he knew to be a "very good lawyer." Lay introduced Regnier to the attorney who then discussed the situation with Regnier.

The attorney testified that Lay took no part in the conversation, that Regnier stated that he wanted to put the real estate in Lay's name and his own name as joint tenants, and to make a will leaving the rest of his property to Lay, and asked the attorney what he thought of it. The attorney explained to Regnier that once he had made a joint tenancy conveyance he would have parted with control of the property, and could no longer treat it as his own, and that any transaction of sale or mortgage would require joint action by himself and Lay. Regnier said that he didn't care about that, and wanted the property put in joint tenancy. On March 14, after the documents had been prepared, Regnier returned alone to the lawyer's office and executed them.

Regnier admitted signing a will and a deed on that date, and testified that the attorney explained both of them to

him. He said, however, that he did not realize until much later that he had given Lay a present interest in the property. He first testified that he did not know what a joint tenancy was, but when asked if he "knew that means both of you have title to the property and when one dies the other gets it," answered "Yes." He also said that he had previously owned the property in joint tenancy with his wife.

After his wife's death, Regnier had one meal a day with the Lays. He testified that his papers, bankbook, checkbook and deeds were kept at the Lays, and that at their suggestion, he had opened a checking account because "they said it would be easier for me to pay my bills," and that Mrs. Lay "would make out the checks and I would sign them." Several years later, Regnier's niece and her husband moved in with Regnier and some difficulty then arose between him and Lay. The difficulty culminated on a Sunday when, Regnier testified, the Lays told him, "Well, we are going to have company, and then you can get your meals out. * * * And from that time on I knowed I made a mistake." He then went to the attorney and told him that he wanted the will revoked, whereupon a new will was executed in favor of the niece, Mrs. Fransen. Almost a year after that, Regnier conveyed the property in controversy to the Fransens, as joint tenants.

A fiduciary relationship must be based on something more than proof that the parties were good friends and neighbors for a number of years and that they exchanged favors with each other. (*Turner* v. *Black,* 19 Ill.2d 296, 306-307; *Pfaff* v. *Petrie,* 396 Ill. 44, 51.) The plaintiffs rely heavily on the fact that after his wife's death, Regnier opened a checking account for the first time, that Mrs. Lay prepared checks for him to sign, and that his bankbook, checkbook, deeds and other papers remained in the Lays' possession. These circumstances do not, as the plaintiffs insist, constitute the management of Regnier's business affairs by the Lays. The

mechanical process of writing out checks at Regnier's direction, for his signature, and the record shows no more than that, does not establish a confidential relationship. Moreover, the record does not show that Regnier's checking account had been opened at the time the challenged deed was executed. There is no evidence of business dealing between the parties, no showing that Regnier ever sought or received advice from the Lays on any business matters, and in fact, no evidence that Regnier reposed in Lay any more than the normal amount of trust and confidence placed in a close friend. The trial court erred in finding that a fiduciary relationship existed.

The decree of the circuit court of Kane County is therefore reversed, and the cause remanded to that court with directions to dismiss the complaint and to enter a decree granting the prayer of the counterclaim for partition and an accounting.

*Reversed and remanded, with directions.*