W. C. McBride, Inc., a Corporation, Plaintiff-Appellant, v. Calvin Oil Company, an Express Trust Acting Through P. E. Tipton, Sole Trustee, and T. M. Bane, and Mary F. Bane, Defendants-Appellees.

Gen. No. 64–43.

Fifth District.

November 5, 1964.

Rehearing denied November 23, 1964.

Butt, Bowers & Angermeier, of Evansville, Indiana, and Conger, Elliott & Fechtig, of Carmi, for appellant.

Kern and Pearce, of Carmi, for appellees.

DOVE, P. J.

Calvin Oil Company, an Express Trust operating through P. E. Tipton, Trustee, was the owner of an undivided three-fourth interest in a group of producing oil and gas leases covering various tracts of land in Hamilton County, Illinois. T. M. Bane was the owner of the remaining one-fourth interest in these leases.

W. C. McBride, Inc. is a Delaware Corporation, licensed to transact business in Illinois, with offices in St. Louis, Missouri. As a result of previous negotiations, the McBride Company, under date of December 16, 1960, caused to be prepared and delivered to said Calvin Oil Company and said T. M. Bane, the following instrument:

"Calvin Oil Company
Mr. T. M. Baines
Carmi, Illinois

Re: Memorandum of Agreement

Gentlemen:

According to our understanding you represent as follows:

1. That you operate and own all of the $\frac{7}{8}$ working interest subject to overrides not in excess of $\frac{1}{16}$ of $\frac{7}{8}$ per lease in and to the following described oil and gas leases covering lands situated in Hamilton County, State of Illinois, to-wit:

195

(Description Omitted)

2. That you own all of the equipment now in use on said properties or purchased in connection herewith.

3. That your interest in said lease or leases is subject to mortgages and or liens in the aggregate amount of $284,000.00.

4. That you are willing to sell and assign with warranty of title all of your interests in said leasehold estates for the sum of $320,000.00.

Now therefore in consideration of the sum of $320,000.00 to be paid as hereinafter provided you and McBride agree as follows:

1. For each leasehold estate, you are to furnish McBride or its attorneys with complete abstracts supplemented to the date of approval by the pipeline company.

2. You are to furnish McBride, with copies of all pipeline opinions showing title as being well vested in you.

3. Within —— days from the date hereof, you are to deliver assignments of the leasehold estates effective as of 7:00 A. M., January 1, 1961, as to the production of all oil and gas.

4. McBride will record said assignments and instruct its attorneys to examine title.

5. Immediately upon its receipt of its attorneys' opinions, McBride will notify you of any title defects which you shall cure at your expense and as rapidly as possible.

6. If record title is found to be fully vested in McBride, McBride will pay the purchase price of $320,000.00, less $330.00 for I. R. S. in the following manner:

By check drawn on W. C. McBride, Inc. payable to the order of:

| T. M. Bane | $29,917.50 ($30,000.00, less $82.50 I. R. S.) |

Calvin Oil Company, Security
Bank of Mt. Carmel, Ill.

Citizens Nat'l Bank of
Evansville, Ind.

Haliburton Oil Well
Cementing Co.

$289,752.50
($290,000.00,
less $247.50
I. R. S.)

7. If title to any of said leasehold estate is found to be defective or nonmerchantable, McBride at its option may waive said defects and pay the full purchase price or reject said purchase in its entirety.

8. McBride is to be furnished on or before January 1, 1961, all well logs (or copies) and well completion data for all wells drilled on said leasehold acreage.

If the above reflects your understanding of this agreement, kindly date, sign and return the attached copy of this letter.

Accepted this ——— day of December, 1960

Yours very truly,
W. C. McBRIDE, INC.
By /s/ R. J. Connors
R. J. Connors, Vice-President."

The Calvin Oil Company, by P. E. Tipton, Trustee, and T. M. Bane, accepted this proposal as of December 16, 1960, and signed the same. As a part of the same transaction, the Calvin Oil Company and T. M.

197

Bane, as of December 17, 1960, executed the assignment referred to in the proposal. This assignment is designated as an assignment of "Oil and Gas Lease," and provides:

"Know all men by these presents:

That the undersigned, THE CALVIN OIL COMPANY, an express trust, acting through P. E. Tipton, sole trustee; also T. M. Bane and Mary F. Bane, his wife (hereinafter called Assignor), for and in consideration of $10.00 and more dollars . . . the receipt whereof is hereby acknowledged, does hereby sell, assign, transfer and set over unto W. C. McBride, Inc. (hereinafter called Assignee), as all interest in and to the oil and gas leases described on Exhibit A attached hereto and made a part of this assignment, in so far as said leases cover and include the premises described, and subject to the overriding royalty interest described in connection with each of said leases set forth on Exhibit A; the effective date of this assignment for the transfer of the production being 7:00 a. m. on January 1, 1961. Together with the rights incident thereto or in connection therewith, the assignors do warrant title to the said described lease, or to the lands covered thereby, but each assignor hereby covenants with the said assignee . . . that he has not conveyed away, assigned or disposed of his interest in said lease insofar as it covers the above described lands.

Assignors hereby release and waive all rights under and by virtue of the homestead and exemption laws of the State of ———.

Executed this 17th day of December, 1960.

The Calvin Oil Company (Seal)
An Express Trust, . T. M. Bane (Seal)

198

By P. E. Tipton, Trustee (Seal) Mary F. Bane (Seal)"

Following the execution of these instruments, the stipulated purchase price was made, and the plaintiff went into possession as provided in the proposal. The 1960 ad valorem taxes due in 1961 were not paid when due. T. M. Bane, however, on September 19, 1961, paid the County Collector of Hamilton County $1,447.24, which was one-fourth of the total amount of the taxes, penalties and interest then past due on the several leaseholds. Subsequently, W. C. McBride, Inc., the plaintiff herein, paid the unpaid balance of the taxes, penalties and interest, amounting to $4,904.66 and thereafter, on April 2, 1962, filed the instant action to recover this amount from the Calvin Oil Company, T. M. Bane and Mary F. Bane.

The issues made by the pleadings were submitted to the court, without a jury, resulting in a judgment for the plaintiff and against the defendant, Calvin Oil Company, for $4,904.66 and costs. A judgment in bar of the action of the plaintiff as against the defendants, T. M. Bane and Mary F. Bane, was rendered, and it is to reverse this judgment in favor of T. M. Bane and Mary F. Bane, that the plaintiff appeals.

The theory of appellant is that the defendants to this proceeding are jointly and severally liable for the entire amount of ad valorem taxes assessed against all the leasehold interests which the defendants sold and assigned to the plaintiff.

Counsel for appellees concede that the general taxes were a lien on the several leaseholds at the time of their assignment to plaintiff, and say that the wording of the assignment is sufficient to raise a covenant of warranty against encumbrances. Counsel insist, however, that the agreement was between the plaintiff and the Calvin Oil Company and T. M. Bane; that

199

Mary F. Bane did not join in the agreement which specifically provided for separate payments of the consideration, and for the deduction from the share of Bane for revenue stamps, and from the share of the Calvin Oil Company for revenue stamps, the amount of revenue stamps to be deducted and computed on the amount to be paid to each seller. Therefore, the covenant of warranty, insists counsel, was several, and not joint, and each grantor warranted only the interest conveyed; that Mary F. Bane made no warranty at all, and Calvin Oil Company only warranted the title to the interest it conveyed, and T. M. Bane only warranted the title to the interest he conveyed.

The general rule governing joint and several covenants is stated in Corpus Juris Secundum as follows:

> "Except as to reimbursement of the purchase price, the obligation of a joint vendor extends to the entire title, and where an obligation is created by two or more, the general presumption is that it is joint, and words of severance are necessary to overcome this primary presumption. This rule does not, however, apply to covenants joint in form made by husband and wife in conveyances of the husband's property, unless it appears that the sole consideration for the deed was received by her, and was by her husband so intended. As a general rule, the question as to whether the liability incurred is joint or several, or joint and several, is to be determined by looking at the words of the covenant. By some authorities this test is exclusive, the subject matter of the contract and the interests of the parties assuming the liability being regarded as having nothing to do with the question. On the other hand, however, it has been held that, where from the subject matter of the covenants, it is the evident intent of the par-

ties that they should be taken distributively, they may be so taken, although there are no words of severalty." (21 CJS Covenants, sec 27.)

The author of the Article on Covenants, Conditions and Restrictions in American Jurisprudence, states:

"The general rule is that where a covenant is made with two or more covenantees, it will be construed as a joint covenant, and not a several covenant with each, unless the provision contains express words of severalty or the parties to the agreement take separate interests in the benefits of the covenant. Thus, where three grantors together covenant to warrant and defend the premises against the lawful claims and demands of all persons claiming through, by, or under them, they are all liable on the covenant and one is not relieved from liability on a general covenant of warranty which he executes with others by the fact that he had only an undivided interest in the property at the time of the conveyance." (14 Am Jur Covenants, Conditions and Restrictions, sec 12.)

In the instant case the language, "the assignors do warrant title to the said described lease, or to the lands covered thereby," is a joint warranty and under the authorities consitutes a joint and several obligation. Counsel for appellee insist, however, that this warranty of title is restricted by the remainder of the covenant, which reads: "Each assignor hereby covenants with the said assignee—that he has not conveyed away, assigned or disposed of his interest in said lease, insofar as it covers the above described lands." This covenant is entirely independent of the other covenant, and the several assignors could not be expected to covenant that the other assignor had not

conveyed away, assigned or disposed of his or its interest in the leaseholds. There has been no default with respect to this covenant, but the default here involved consists in the failure to pay all of the taxes and not that one of the defendants has conveyed away, assigned or disposed of his or its interest in the leasehold. There is nothing in the language of this assignment that can be said to indicate an intention on the part of the assignors to sever their respective undivided interests relative to the title of the leaseholds, and there is nothing in the assignment which is inconsistent with the general warranty contained therein.

In Ragle v. Dedman, 50 Ind App 359, 98 NE 367, it appeared that the heirs of Hiram N. Dedman conveyed certain real estate in Pike County, Indiana, to John W. Ragle and others. There was a valid judgment against Oliver Dedman, one of the grantors at the time of the execution of the statutory warranty deed, and this judgment was a lien on his fractional interest in the land conveyed. The grantees paid this judgment in order to prevent a sale of his interest in the land, and then brought an action for damages for breach of the covenant against encumbrances against all of the grantors. In reversing the judgment of the trial court, which dismissed the complaint, the court pointed out that the land was held by the grantors as tenants in common, and even though the quantities of their interests may have been unequal, there was a unity of possession between them, and that they conveyed the land as a common estate and all joined in a single deed. The opinion continued:

"The deed contains no special provisions on the part of any of the grantors limiting the broad scope of the covenant against 'all encumbrances', nor is there any covenant inconsistent with the general one in this respect. Consequently, we have

202

before us a deed in which the parties, to express their intention, employed clear and positive language. —— Each of the grantors, at the time they executed the deed to appellants, had all the rights of a tenant in severalty, except that of sole possession. And in the exercise of that right, any one of them might have conveyed his interest, in which case any covenant in the deed would be limited to the interest granted. —— The rights of the parties must be measured by their agreement as expressed in the deed. If the wording of that instrument was subject to more than one construction, it would be the duty of the court to so construe it as to effectuate the intention of the contracting parties. But, as the language employed is not uncertain, there is no ground for construction and the contract as expressed in the deed must be enforced as made, although, in the opinion of the court, it may seem in some respects inequitable."

The court then quoted from Rawle on Contracts, 5th Ed Sec 304, where it is said: "Whether the liability created by covenants for title be joint, or several or joint and several, obviously depends upon the terms in which they are expressed. Where an obligation is created by two or more, the general presumption is that it is joint, and words of severance are required in order to confine the liability of the covenantor to his own acts."

In a later Indiana case, Phipps v. Sappenfield, 54 Ind App 139, 102 NE 841, the court cited Ragle v. Dedman, 50 Ind App 359, 98 NE 367, and in the course of its opinion said: "It was held in Ragle v. Dedman, supra, that where tenants in common conveyed land by a joint warranty deed, they were all liable in their covenant of warranty for an encumbrance which af-

fected the interest of only one tenant. Conversely, where, as in the present case, all the heirs, tenants in common, joined in conveying the land and making a joint covenant of warranty, such warranty extends on the part of each warrantor, or to the entire land conveyed, and not merely to the interest which he himself owned."

In Carleton v. Tyler, 16 Me 392, 33 Am Dec 673, three grantors in a single instrument covenanted to warrant and defend the premises conveyed against the lawful claims and demands of all persons claiming through, by, or under them, and it was held that they were all liable jointly and severally on the covenant. In its opinion, the court said: "The terms 'through or under us', used in the covenant, are broad enough to embrace all lawful claims, derived from the covenantors, collectively or severally. The covenant was joint, and we must regard it as too narrow a construction to hold that each might have conveyed separately without a breach. We have hesitated whether the covenant might not be taken distributively, so as to hold each severally liable upon his own separate conveyance; but the language, expressive of a joint covenant, is too strong to justify the court in withholding from the grantee a remedy against all ———. If the defendants are held beyond what they intended or expected, they should have explained themselves. In the absence of any better or more satisfactory rule of construction, the law requires that the terms they use should be taken most strongly against them."

Williams v. O'Donnell, 225 Pa 321, 74 A 205, 26 LRA (NS) 1094, was an action brought to recover upon a breach of a general covenant of warranty contained in a deed of conveyance. There was a mortgage on the land conveyed, executed by one of the grantors who joined in the conveyance. The grantee was evicted by the holder of the mortgage. He then brought suit

against all of the grantors. One of them set up the defense that he owned only an undivided interest in the property, and that he had not joined in the mortgage which brought about the eviction. As to this defense, the court said: "He was one of the grantors to Tarbox (the grantee), and united with the other grantors in the warranty. It was his warranty as well as theirs. Nor is it of any consequence that he had but an undivided fourth interest in the premises at the time of the conveyance."

Counsel for appellee insists that if the consideration for the conveyance is divided among the several grantors, and each paid separately, and title fails only as to the interest of one grantor, the warranty is several and not joint. Counsel cite Evans v. Sanders, 10 B Monroe 291, and state that this case is "on all fours with the present case and reaches the same result as that of the trial court."

In this Kentucky authority, Evans brought separate actions against Sanders and Wrenchy. Each action was founded on a deed made by four heirs and devisees of James Sanders, deceased, of whom Wrenchy and Sanders were two. The warranty in the deed was that the heirs "each for his separate undivided share aforesaid in said tract of land hereby conveyed, warrants and will each separately, for his own share, forever defend said interest." In the course of its opinion, the court said: (p 292) "The rule is this: In the case of parties demising or granting the separate interest of each in an estate, the covenant shall be considered co-extensive with the interest granted; and therefore, these shall be several, where a several interest is granted; and joint, if a joint interest be granted. (1 Chitty, 147). In this case, although all have united in the deed, it is in fact the separate covenant of each. The consideration is $15.00 to each, and the covenant expressly stipulates that each heir warrants separately

205

for his own share. The plaintiff very properly sued out his warrant against each separately, and if he can prove a breach of the covenant of warranty, will be entitled to recover of each defendant."

The facts in the Evans case are clearly distinguishable from the facts in the instant case. Here the assignment made no reference as to how the payment of the consideration was to be made. No words appear which would indicate that each seller warranted separately his undivided interest, but on the contrary the warranty was general and in these words, "the assignors do warrant title to the said described lease or to the lands covered thereby." The assignment of the leasehold estates was not of any undivided portion, but of all the leasehold interests. The taxes were a lien, not against an undivided interest in these leases, but against all of the leasehold estate. When these taxes became due and were unpaid, defendants breached their general warranty, and the warranted title to the entire leasehold, not just an undivided portion, failed. The assignment contains no words of limitation or severance, and its language is clear and unambiguous, constitutes a joint obligation, and creates a joint liability. We have read Temple v. Shaw, 203 Fed Rep 974, the only other authority cited by appellee, but the facts in that case are also distinguishable from those in the instant case.

██ ██ The defendant, Mary F. Bane, however, is the wife of the defendant, T. M. Bane, and plaintiff concedes there is no liability on her part to pay the taxes. The rule is that where a wife does not join in a contract of sale of real estate, and does not receive any of the consideration, but does join in the warranty deed conveying the property in order to release her inchoate dower, she is not liable on the warranty contained in the deed. (Center v. Elgin City Banking Co.,

206

185 Ill 534–537, 57 NE 439; Warner v. Flack, 278 Ill 303–316, 116 NE 197). Here, Mary F. Bane, did not join in the agreement of sale, but did join in the assignment. No consideration was paid to her for so doing, and under the authorities, she is not liable on the covenants contained in the assignment.

The trial court erred in not rendering judgment against the defendant, Calvin Oil Company, and the defendant, T. M. Bane, for the full amount of the taxes paid by plaintiff. The judgment appealed from is therefore reversed, and the cause is remanded with directions to enter an appropriate judgment as indicated.

Judgment reversed and cause remanded with directions.

REYNOLDS and WRIGHT, JJ., concur.