No. 25,220.

JOHN A. FLICK et al., *Appellants*, v. FRED L. MURDOCK, *Appellee*.

SYLLABUS BY THE COURT.

1. TITLE TO REAL ESTATE—*Grantee of Quitclaim Deed May Recover the Property from One Who Holds Under a Quitclaim Procured by Fraud and Without Consideration.* Grantees of property conveyed under a quitclaim deed may maintain an action to recover the property from one who previously procured a quitclaim deed therefor from their grantor by fraud and without consideration.

2. SAME—*Heirs of a Deceased Grantor May Maintain Action to Recover Property Procured from Him by Fraud and Without Consideration— Petition States Cause of Action.* Heirs of a deceased grantor may maintain an action to recover property procured from him by fraud and without consideration, and a petition in ejectment, otherwise sufficient, which alleged that the grantor had died at a certain time and that they were his heirs and only heirs stated a cause of action.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed April 5, 1924. Reversed.

*R. P. Evans, George Clammer,* both of Manhattan, *J. V. Humphrey,* and *Arthur S. Humphrey,* both of Junction City, for the appellants.

*A. E. Crane,* of Topeka, and *C. B. Daughters,* of Manhattan, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: This controversy involves the title and possession of certain real estate. An objection to the introduction of evidence, on the ground that the petition failed to state facts sufficient to constitute a cause of action was sustained and plaintiffs appeal.

The land in controversy was owned by Mary A. Murdock, a daughter of Jackson Flick, and stepmother of· the defendant. ˙She died in the early part of 1919. Her father was her only heir. After the death of Mary A. Murdock the defendant visited˙Jackson Flick in his home in Virginia and procured from him a quitclaim deed for the land in controversy. The deed was executed April 1, 1919. The heirs of Jackson Flick (plaintiffs here) on June 2, 1919, procured a quitclaim deed from him for the land in question. In it he stated that any other purported conveyance from him was fraudulent and without consideration. This action was filed July 29, 1919. Jackson Flick died September 1, 1919.

Plaintiff's amended petition of December 9, 1919, alleged, among other things:

"That they are the owners of and have the entire legal and equitable estate in and are entitled to the immediate possession of an undivided one-half interest in and to the following described real estate situated in Pottawatomie county in the state of Kansas, to-wit: . . . and that said defendant unlawfully keeps them out of the possession of said real estate. Plaintiffs say, as facts on which their title is based, that they became the owners of an undivided one-half interest in and to said real estate under and by virtue of a deed in due form executed and delivered to them on the 2d day of June, 1919, by one Jackson Flick who was then the owner of an undivided one-half interest in said real estate; that said deed was duly recorded in the office of the register of deeds of Pottawatomie county, Kansas, on the 9th day of June, 1919, in Book 55 on page 399; that a copy of said deed marked Exhibit 'A' is hereto attached and made a part of this amended petition; that said defendant claims title to the same undivided one-half interest in said real estate through the said Jackson Flick by virtue of a certain quitclaim deed executed to him by the said Jackson Flick on the first day of April, 1919, and recorded in the office of the Register of Deeds of said Pottawatomie county, Kansas, on May 9, 1919, in Book 55, on page 393; that the last aforesaid deed was procured by defendant from the said Jackson Flick without any consideration therefor, by means of false and fraudulent representations and threats, the same being in substance as follows, to-wit: . . . (Then follow, in detail, allegations of false representations made by defendant in procuring the deed from Jackson Flick.) Plaintiffs say that by reason of the aforesaid premises said deed of Jackson Flick to defendant was and is entirely void and without force and effect and defendant is without other

title or claim to the undivided one-half interest in said land conveyed as aforesaid to plaintiffs. Plaintiffs further say that, at the time he executed said deed marked Exhibit 'A' the said Jackson Flick intended to, and did, convey to plaintiffs his undivided interest in the north half of the southeast quarter of said section sixteen (16), the same being a portion of the 1320-acre tract described in such deed and inherited by him from the said Mary A. Murdock but that by a mistake of the person drawing the deed, the same was omitted from the detailed description in said deed; that the said Jackson Flick died intestate about September 1, 1919, and plaintiffs are his heirs and all his heirs."

The deed, "Exhibit A," referred to in the petition, contained, among other things, the following:

·"This indenture made this 2d day of June, 1919, between Jackson Flick, a single man of the city of Keyser—and sole surviving heir at law of my late deceased daughter, of Manhattan, Kan., Mary Murdock, of Mineral county, in the state of West Virginia, of the first part, and . . . (the plaintiffs), being my sole surviving children and my heirs at law in event of my death, . . . of the second part, Witnesseth, that said party of the first part, in consideration of the sum of one dollar and of his love and affection to them as their father, and ——— Dollars, the receipt of which is hereby acknowledged, does by these presents remise, release and quitclaim, unto said parties of the second part, their heirs and assigns, all the following described real estate, . . . being the undivided one-half interest in the 1320 acres more or less inherited by me as the sole surviving heir at law of my late deceased daughter, Mary A. (Flick) Murdock of Manhattan, Kansas, to have and to hold to the use of my said heirs as grantees herein, their heirs and assigns forever—and I do hereby declare and make known that, up to the execution and delivery of this instrument, I am and was the legal and true owner of said lands, and that any written contract, or instrument of conveyance, or any other writing purporting to convey or renounce my title or ownership in said lands as sole heir at law of my daughter Mary A. (Flick) Murdock, is false and fraudulent, and particularly any instrument, writing or conveyance procured from me since the death of my said daughter in favor of Fred L. Murdock, . . . whatever their character or form may be, were wholly without any consideration and such as they were, were signed by me solely through the belief and impression created by them by statements theretofore made to me by them to procure such execution and which statement and fact I find wholly unconfirmed, and that in fact said Fred L. Murdock nor . . . had any lawful cause or right to any conveyance of my inherited interest in said lands to them, without just, fair and reasonable consideration for the value thereof—and I do now abjure and repudiate the validity of any such conveyance as they may have induced me to execute with respect to this land."

It is contended by the defendant that, at the time of the execution of the deed by Jackson Flick to the plaintiffs, Jackson Flick had neither the title nor possession of the property; that the deed asserted no title on his part and did not purport to pass any title

to the grantees (plaintiffs); that Jackson Flick, by such deed, gave only such rights as he had to the property; that the plaintiffs are subsequent grantees without prior equities in the land, and are not in position to question the consideration of the former deed; that one without a prior equitable right cannot question a conveyance made by his grantor on the grounds that a prior deed was procured by fraud.

The defendant cites a number of cases to sustain his contention which need not be analyzed here. They are largely based on the common-law principle against champerty and maintenance. It is clear that the petition here considered does not involve champerty or maintenance as known in modern jurisprudence. A discussion of champerty and maintenance is found in 5 R. C. L. 271. See, also, *Brown v. Bigne et al.,* 21 Ore. 260. Modern authorities make the distinction between the sale of an interest to which a right to sue is incident and the sale of a mere right to sue. The former is good, the latter is not.

In 2 A. & E. Enc. of L. 1924 the rule is stated in the following language:

"The assignment of a mere right to file a bill in equity for fraud committed on the assignor is void as being against public policy and savoring of maintenance. But it seems that this rule, as established by the authorities, applies only to a case where the assignment does not carry anything which has itself a legal existence and value independent of the right to sue for a fraud. It does not apply to a case where such right is merely incidental to a subsisting substantial property which has been assigned, and which is itself intrinsically susceptible of legal enforcement. In such a case the assignee is entitled to maintain an action to set aside a fraudulent conveyance of the property assigned if his assignor might have done so."

Section 2265, volume 4 of Page on Law of Contracts, states:

"So the assignment of a claim carries with it the right to sue in rescission for fraud, or the right to sue to set aside a fraudulent conveyance, though such right of action could not be assigned apart from such claim. So an assignee has the same right as his assignor to rescind for the fraud of the adversary party and recover on *quantum meruit.*"

In *Hewey v. Fouts,* 91 Kan. 680, 683, 139 Pac. 407, this language was used:

"Davis could, however, make a valid assignment of his right to reclaim the money the defendants had wrongfully obtained from him, because he was privileged to regard them as having agreed to restore it to him. 'Whenever one person commits a wrong or tort against the estate of another, with the intention of benefiting his own estate, the law will, at the election of the

party injured, imply on presume a contract on the part of the wrongdoer to pay to the party injured the full value of all benefits resulting to such wrong-doer.' (*Fanson v. Linsley*, 20 Kan. 235, syl. ¶ 2.) Therefore Hewey could maintain an action upon the claim that originally accrued in favor of Davis to the extent of recovering whatever Fouts profited by the transaction, but no further."

In *Traer v. Clews*, 115 U. S. 528, 29 L. Ed. 467, it was held: Though an assignment of a mere right to file a bill for fraud committed upon the assignor is void, a conveyance of property is not void because the grantee may have to bring suit to enforce his right to the property conveyed.

In the opinion it was said:

"The next contention of the appellants is that the transfer executed by Tappan to Clews was not a sale to him of a right of property in the stock of the construction company, and of the dividends, but merely a transfer of a right to sue Traer and his wife for a fraud, and was, therefore, void . . . The rule is that an assignment of a mere right to file a bill in equity for fraud committed upon the assignor will be void as contrary to public policy and savoring of maintenance. But when property is conveyed, the fact that the grantee ·may be compelled to bring a suit to enforce his rights to the property, does not render the conveyance void. This distinction is taken in the case of *Dickinson v. Burrell*, Law Rep. 1 Eq. 337 . . . The rule was expounded by Mr. Justice Story in *Comegys v. Vasse*, I Pet. 193 [26 U. S. bk. 7, L. E. 108], as follows; 'In general it may be affirmed that mere personal torts, which die with the party, and do not survive to his personal representatives, are not capable of passing by assignment, and that vested rights *ad rem* and *in re*, possibilities coupled with an interest and claims growing out of and adherent to the property, may pass by assignment.' In *Erwin v. United States*, 97 U. S. 392 [Bk. 24 L. Ed. 1065], Mr. Justice Field, who delivered the opinion of the court, said: 'Claims for compensation for the possession, use, or· appropriation of tangible property constitute personal estate equally with the property out of which they grow, although the validity of such claims may be denied, and their value may depend upon the uncertainties of litigation or the doubtful result of an appeal to the legislature.' And see *McMahon v. Allen*, 35 N. Y. 403, decided in the state where the assignment in question was made. *Weire v. The City of Davenport*, 11 Iowa 49, and *Gray v. McAllister*, 50 Iowa 498, decided in the state where the suit was brought. See, also, a discussion of the subject in *Graham v. R. R. Co.*, 102 U. S. 148 [Bk. 26, L. Ed. 106]. Applying the rule established by these authorities, we are of opinion that, so far as the question under consideration is concerned, the assignment of Tappan to Clews was the transfer, not merely of a naked right to bring a suit, but of a valuable right of property, and was, therefore, valid and effectual." (pp. 538-541. See, also, *Stewart v. Balderston*, 10 Kan. 131, *Tieghtmier v. Mongold*, 20 Kan. 90; *Fanson v. Linsley* 20 Kan. 235; *K. M. Rly. Co. v. Brehm* 54 Kan. 751, 69 Pac. 690; *Metropolitan Life Ins. Co. v. Fuller*, 61 Conn. 252; *Houston v. Association*, 80 Miss. 31; *Warner v. Flack* 278 Ill. 303.)

In the instant case the plaintiffs took from Jackson Flick a quit-claim deed. This conveyed all of his interest (R. S. 67-204). He repudiated the conveyance to the defendant because it was procured through fraud and no consideration had been paid therefor.

The defendant contends that the amended petition filed December 9, 1919, did not state a cause of action in favor of the plaintiffs as heirs of Jackson Flick, and that the first time a cause of action was stated in this regard was when plaintiffs amended their petition on the 3d day of January, 1922; that the deed to the defendant, of which complaint was made, was executed and delivered April 1, 1919, recorded on May 9, 1919; that it gave notice of the claimed fraud; and that the plaintiffs' cause of action, as heirs of Jackson Flick, was barred by the two years statute of limitations.

The amended petition of December 9, 1919, alleged that Jackson Flick died about September 1, 1919, and plaintiffs were his heirs and all his heirs. On June 10, 1920, there was inserted in the amended petition, by interlineation, the word "intestate" so that the allegation stated—"that the said Jackson Flick died intestate about September 1, 1919." Later, after the petition had been amended in conformity with a motion by the defendant to compel plaintiffs to separately state and number their causes of action, substantially the same allegations were made. That they were not contained in the petition of December 9, 1919, in separately numbered causes of action made no material difference. It was apparent that plaintiffs were relying on two sources of title: one, upon the deed of June 2, 1919, the other, that they were the heirs of Jackson Flick. The allegation that Jackson Flick died about September 1, 1919, and that plaintiffs were his heirs and only heirs was sufficient.

In a note following *Warner v. Flack*, supra, 2 A. L. R. 437, it is said:

"The right to cancel a deed obtained from a grantor by mistake, fraud, duress, or undue influence descends to the heir if it exists in the ancestor unimpaired at the time of his death." (Citing numerous authorities. See, also, *Smith v. Smith*, 84 Kan. 242, 114 Pac. 245; *Shell v. Mulligan* 103 Kan. 185, 173 Pac. 286; *Winkler v. Korzuszkiewicz*, 112 Kan. 283, 211 Pac. 124.)

Under all the circumstances the objection to the introduction of testimony should have been overruled.

The judgment is reversed and the cause remanded for further proceedings.