No. 36,580

HELEN CHUBB, ARCHIE CHUBB and ROBERT CHUBB, *Appellants,*
v. C..G. LENNAN, T. F. LENNAN, THE EAGLE-PICHER MINING &
SMELTING COMPANY, JOHN A. ROBINSON, CARL A. GEIST, A. E.
BENDELARI and GEORGE L. COLEMAN, JR., constituting the Trustees
and Shareholders of COMMERCE MINING AND ROYALTY COMPANY,
and R. J. TUTHILL, *Appellees.*

(178 P. 2d 208)

Opinion filed March 8, 1947.

*A. M. Henderson,* of Youngstown, Ohio, argued the cause, and *Leo Arm-
strong, Paul Armstrong,* both of Columbus, and *C. P. Henderson,* of Young-
stown Ohio, wete with him on the briefs for the appellants.

*Ray McNaughton,* of Miami, Okla., argued the cause, and *Al F. Williams,*
of Topeka, *Don H. Elleman,* of Columbus, and *Arthur G. Croninger,* of
Miami, Okla., were with him on the briefs for appellees C. G. Lennan
and T. F. Lennan; *Marc Boss, Fred A. Walker,* both of Columbus, *A. C.
Wallace* and *John Wallace,* both of Miami, Okla., were with him on the briefs
for appellees Eagle-Picher Mining & Smelting Company, John A. Robinson,
Carl A. Geist, A. E. Bendelari and George L. Coleman.

The opinion of the court was delivered by

BURCH, J.: This appeal is from rulings sustaining demurrers of
separate defendants to the second amended petition filed in an action
seeking an accounting for mining royalties and the cancellation of
all alleged contractual relationships existing between the plaintiffs
and the defendants. The second amended petition extends over
seventeen pages of the printed abstract and the exhibits, which are
made a part thereof, require over twenty-seven pages for printing pur-
poses. Only such allegations as the court considers helpful to ex-
planation of the decision will be summarized.

The plaintiffs allege that they are the owners of the involved choses in action "as assignees of one D. S. Chubb, now deceased," by virtue of a certain assignment made to the plaintiffs, on the 18th day of April, 1938. A copy of the assignment is attached to the plaintiffs' first amended petition as Exhibit "1." Such exhibit is designated as a "Deed." It sets forth that D. S. Chubb, in consideration of one dollar and love and affection conveys unto the plaintiffs and their heirs and assigns all of Chubb's "right, title, and interest, either in law or equity, in and to the following-described lands located in Cherokee county, Kansas, to wit: Lots three (3) and four (4) in section thirteen (13), township thirty-five (35) south, range twenty-three (23) east of the sixth principal meridian in said county and state, and including any and all royalties on mines or minerals coming from said land; provided, this conveyance is made subject and inferior to any contractual rights now outstanding in favor of other parties and more particularly, but without limiting thereto, the following contracts: (1) Mining contract dated August 2, 1933, between the undersigned and Commerce Mining and Royalty Company and others; (2) two contracts modifying said contract of August 2, 1933, one dated April 9, 1938, permitting removal of ores from land for retreatment, and the other, dated this date, changing the name of the custodian of the funds received from sale of ores from said land; and (3) assignment of royalty this date to First National Bank of Miami, Oklahoma, to secure indebtedness."

The Commerce Mining and Royalty Company, referred to in the exhibit, is named as one of the parties defendant to the action. It is designated in the petition as a business trust. The petition alleges that the named defendants, John A. Robinson, Carl A. Geist and A. E. Bendelari and George L. Coleman, Jr., constitute all of the trustees and shareholders of the named business trust; that such trust was revoked and dissolved on or about the 30th day of March, 1939, and that on or about such date Commerce Mining and Royalty Company deeded to the defendant, The Eagle-Picher Mining & Smelting Company, a corporation, certain mineral rights and leasehold interests in and to the involved property which the Commerce Mining and Royalty Company had theretofore obtained from other named defendants, C. G. and T. F. Lennan. The remaining named defendant, R. J. Tuthill, is alleged to have been at one time a part owner of a mining lease upon a portion of the premises and the

petition seeks to quiet the plaintiffs' title to any interest he may claim.

The petition discloses a series of mining leases, extensions thereof, and transactions pertaining thereto among the various parties beginning in 1920 and extending until October 9, 1944, on which date the action was brought. Plaintiffs allege that all mining leases and agreements executed by the deceased, D. S. Chubb, prior to March 16, 1927, provided for the payment of eight percent royalty on minerals mined from the property and that the royalty was paid to such date. Apparently, in connection with the mining of the property for lead and zinc, ores and other valuable minerals prior to March 16, 1927, chat, tailings, sludge and slime had been accumulated upon the surface of part of the property. Chubb had retained title to the surface rights and had caused part of the land hereinbefore described to be divided into town lots in connection with the platting of Chubb's First Addition to the original town of Picher, now Treece, Kansas. Many of the lots must have been sold without reserving the mineral rights thereunder. While the petition is somewhat obscure on the point, we learn by reference to its Exhibit No. 6 that the defendant, C. G. Lennan, who was the wife of the defendant, T. F. Lennan, must have acquired title to a substantial number, if not all, of the lots in Chubb's Addition which had been sold prior to March 16, 1927. Such a result must follow because the petition alleges that on such date Chubb and his wife executed to C. G. Lennan Exhibit 6. The exhibit is designated as a "quit claim deed," but examination of it reveals that it is in the nature of a royalty agreement in which Chubb conveyed to C. G. Lennan all of his interests in that part of lot 4 which had not been included in the plat of the addition, and approximately sixty described lots in the addition. In consideration therefor the grantee agreed to pay to Chubb three percent of the gross proceeds from the sale of all ore mined from beneath the surface and recovered from the chats, tailings, sludge and slime on the surface until February 18, 1935, and thereafter five percent. In addition, however, the grantee agreed to pay Chubb the same royalty on all ores mined and recovered from approximately 100 lots in the addition to which Chubb apparently had lost title. Plaintiffs allege that prior to and at the time the quitclaim deed (Exhibit 6) was executed, the defendants, T. F. Lennan and his wife, C. G. Lennan, were conniving together to obtain title to certain ores and minerals underlying the lots in

question and to the tailings and chats lying upon said land. Their petition further alleges that at the time C. G. Lennan obtained the so-called quitclaim deed, she knew that her husband, T. F. Lennan, and R. J. Tuthill jointly and individually had mineral leases outstanding upon the property and that such leases provided that D. S. Chubb should be paid eight percent royalty for the minerals mined from the subsurface of the land. In other words, the petition alleges that the defendants, C. G. Lennan and T. F. Lennan, her husband, knew that he was obligated to pay to Chubb eight percent royalty on all minerals mined from beneath the surface land under and by reason of outstanding existing prior leases and that therefore when C. G. Lennan accepted delivery of the designated quitclaim deed she simultaneously accepted and assumed to perform all of the obligations incurred by the defendants, T. F. Lennan and R. J. Tuthill under the previously obtained leases and that consequently she thereby became obligated to pay to D. S. Chubb not three percent or five percent as the designated quitclaim deed provided, but eight percent. The petition carefully avoids any allegation indicating that ordinarily a different royalty might be paid upon all minerals mined from beneath the surface from that which might be paid for minerals recovered from chats, tailings, sludge and slime upon the surface by reason of the operation of a concentration plant, even though Exhibit 6 and the petition refer to the operation of a concentration plant upon a part of the involved property.

Continued examination of the allegations of the petition discloses that on or about the 2d day of September, 1930, the defendants, T. F. Lennan and C. G. Lennan, sold and assigned unto the defendant, Commerce Mining and Royalty Company, all their interest in the lands hereinbefore referred to, as security for the payment of a debt aggregating $31,250, and that thereupon the Commerce Mining and Royalty Company took possession and control of all the rights and interests claimed to have been acquired by it. It is alleged that the trust thereby assumed and accepted the obligations of its grantors to the said Chubb. The petition continues by alleging, however, that on the 2d day of August, 1933, the defendants, T. F. Lennan and C. G. Lennan, and Commerce Mining and Royalty Company, caused and induced the said Chubb to execute a certain agreement which was designated as a "Contract" and set forth as Exhibit 8 to plaintiffs' petition. We note that the petition specifically alleges that the contract recited that it was the "desire of

the parties to it to set forth in writing the interests of the said D. S. Chubb and other parties" in and to the lands described in the contract, but it is alleged also that the contract also "purported to provide for the payment to said D. S. Chubb of lesser percentage of royalties on minerals produced from said lands than those to which he was entitled under the terms of the leases and contracts theretofore made, as hereinbefore alleged. Said last mentioned contract further provided that the said D. S. Chubb and others released, relinquished and quitclaimed unto defendant. C. G. Lennan all their right, title, interest or royalty in the minerals and other valuable deposits lying in, upon and under the lands hereinbefore first described." The plaintiffs aver, however, that the contract was void and unconscionable for the reason that the said D. S. Chubb was caused to execute it "without any valuable consideration passing to him therefor; that he was eighty-five years of age at the time and greatly enfeebled by reason of mature years and incapacitated from properly attending to business and placed full faith, trust and confidence in the good faith and honesty of the said T. F. Lennan and C. G. Lennan. That he was caused to execute and acknowledge said contract by unfair advantage over the credulity of old age taken by said T. F. Lennan and C. G. Lennan, who posed as his friends, and persuaded him not to counsel with or take advice from plaintiffs." The plaintiffs allege that they had no knowledge of the facts which resulted in the execution and acknowledgment of the contract until within the year prior to the commencement of this suit and that any additional facts of fraud perpetrated upon the said D. S. Chubb other than those specifically alleged were unknown to the plaintiffs. The plaintiffs seek to have the contract of August 2, 1933, and the quitclaim deed dated March 16, 1927, set aside because it is asserted that both were obtained by fraud and without valuable consideration.

A significant fact to be noted at this point is that the contract the plaintiffs seek to have set aside is the same contract referred to in the deed to the property under which the plaintiffs are claiming their interest. Such deed clearly reads: "This conveyance is made subject and inferior to any contractual rights now outstanding, . . . and more particularly, but without limiting thereto, the following contracts: (1) Mining contract dated August 2, 1933, between the undersigned and Commerce Mining and Royalty Company . . ."

The petition continues by alleging that the Commerce Mining and Royalty Company profited and benefited by the interest which it had acquired and unjustly enriched itself to the loss and damage of Chubb and these plaintiffs until it conveyed its interest to the Eagle-Picher Mining & Smelting Company on the 30th day of March, 1939, and that thereafter the last-named defendant continued to operate and control the rights and interests acquired by it and to distribute the royalties due the plaintiffs in the same manner and with the same degree of injustice as its predecessor in title. Thereafter the petition alleges that in the month of December, 1942, the defendants suspended operation of the mining and selling of ores and minerals lying in and upon the premises without any notice whatever to the plaintiffs and that the defendants assumed the obligations of the said T. F. Lennan and C. G. Lennan to continue the work of mining the described lands in good faith as long as ores and minerals could be mined in paying quantities. The plaintiffs further allege that at the time of the suspension of mining operations by The Eagle-Picher Mining & Smelting Company there remained in, upon and under the lands quantities of ores and minerals which could have been mined with profit to the defendants and that the continued suspension of the mining had caused and will cause damage to the plaintiffs. Many additional allegations are contained in the petition but the foregoing will suffice for the purpose of comprehension of the material parts thereof.

One of the grounds urged in support of the demurrers is that the plaintiffs have no legal right to maintain the action for the reason that if any cause of action is set forth in the amended petition it is in the heirs of Chubb and not in the grantees named in the deed under which the plaintiffs claim their rights. It is contended by the defendants that grantees named in a quitclaim deed may not maintain an action to set aside their grantor's prior deed for fraud. In support of such contention they cite *Carithers v. Weaver*, 7 Kan 110. (See, also, 66 C. J. 1099, § 916.) Examination of authorities upon the general question develops that there is a conflict of judicial opinion as to whether the execution of an instrument which is clearly only a quitclaim vests in the grantees any right to set aside prior conveyances on the ground that such conveyances were obtained fraudulently. Such rule is often followed in cases wherein the prior instruments were of record at the time the grantees obtained their deeds. In the present case all the previously-executed instruments

were recorded long prior to the date when the plaintiffs obtained any title to the property. Very frequently the cases considering the general question are influenced by the interpretation of the language in a particular instrument. Examination of the deed to plaintiffs in the present case instantly reveals that it is not an ordinary quitclaim deed. It purports to convey both legal and equitable title in and to specific property and includes an assignment of all royalties on mines and minerals coming from the land. Consequently, we do not have before us for consideration an instance wherein the general rule asserted by the defendants is necessarily controlling. We must be guided by the particular language used in the instrument under which the plaintiffs assert their right to maintain the action. Before giving that question further consideration, however, we observe that the action was not brought by the plaintiffs as the heirs and only heirs of the deceased Chubb but that the plaintiffs assert any and all rights solely by reason of their having been named as grantees in the deed. Such instrument clearly sets forth, as hereinbefore stated, that the rights which the plaintiffs acquired under the instrument were "subject and inferior to . . . [the] mining contract dated August 2, 1933, between the undersigned [Chubb] and Commerce Mining and Royalty Company . . ." In our opinion, the conveyance in the present case did not assign to the plaintiffs any right which the grantor possibly might have had to set aside the mining contract of August 2, 1933, for the simple reason that any rights which the plaintiffs acquired were specifically made subject and inferior to the rights acquired by all parties to such mining contract. The mining contract referred to unquestionably was executed with the intent to settle all controversial questions which had arisen in the past relative to the interests owned by the respective parties in and to the mineral property. It reads in part: ". . . WHEREAS, Each of the parties hereto claim some right or interest in or royalty on minerals beneath the surface of the following described lands . . . [describing them], and WHEREAS, various contracts have been executed under which the parties hereto or some of them claim their rights concerning said land, and WHEREAS, oral understandings have been reached between some of the parties hereto concerning the same subject matter, and . . . WHEREAS, the parties hereto desire to set forth in writing the interests of the respective parties hereto, Now, Therefore, the following agreement is made binding upon each of the parties hereto,

their respective successors, personal representatives, heirs, or assigns: . . ." The contract sets forth the respective interests agreed upon among all of the parties and makes many provisions for the operation and development of the property and the payment of royalties to the various parties.

The "various contracts" referred to in the contract dated August 2, 1933, included the lease to T. F. Lennan, under the terms of which eight percent royalty was to be paid to Chubb, and also included, obviously, the instrument dated March 16, 1927, which the plaintiffs seek to set aside. All such other contracts, deeds, or instruments were merged in the contract dated August 2, 1933. Possibly Chubb, by promptly bringing proper action, could have sought to have the instrument dated March 16, 1927, set aside but Chubb did not see fit to do so. Instead, he agreed to have any and all of his rights under that instrument and all previous instruments settled by the provisions of the contract dated August 2, 1933. Since the plaintiffs' rights are, by the terms of their grant, specifically and explicitly subject and inferior to the contract, it follows that they are not in a position to have the instrument dated March 16, 1927, set aside.

We do not need to consider the prolonged provisions of the contract of August 2, 1933, because the plaintiffs in the present case do not seek to recover under such contract. On the contrary, they seek to have it set aside. Since any rights they may have in and to the property are subject to such contract by reason of the specific terms of their grant, they are not in a position to have the contract set aside. In such circumstances it becomes immaterial whether the contract to which their rights are subject was obtained by fraud. Examination of the contract clearly develops that it was not void for lack of consideration because it contains many mutual obligations binding upon the respective parties thereto. The plaintiffs do not contend and are not in a position to assert that the provision in the deed which made their rights subject and inferior to the rights under the mining contract was inserted in such instrument by reason of any fraud and misrepresentations made to their grantor at the time the instrument was executed. The plaintiffs rely in part upon the case of *Flick v. Murdock*, 115 Kan. 862, 225 Pac. 119. The facts in the cited case are not similar to those in the instant case. The action in the cited case was brought by all the heirs who were also grantees in a deed, and the instrument, under which

the grantees claimed, assigned to them the right to contest a previously executed deed and in effect was a warranty as against the prior deed. In the present case the grantor confirmed the prior instrument in the deed to the plaintiffs. The distinction between *Flick v. Murdock*, supra, and this case was in part developed in the case of *Westhusin v. Landowners Oil Ass'n*, 143 Kan. 404, 55 P. 2d 406, from which the following is quoted:

"A contention, based on the decision in the case of *Flick v. Murdock*, 115 Kan. 862, 225 Pac. 119, that plaintiffs purchased from Collins privilege to avoid the royalty deed, is without merit. Plaintiffs purchased with notice and with actual knowledge of the royalty deed. They got what their deed granted to them, which included the land, a share of rental and royalty, determinable by taking into account the royalty deed, and benefits under the royalty deed." (p. 408.)

In the present case the plaintiffs apparently have been accepting the benefits arising from the operation of the property under the contract. Whether they are estopped thereby to assert that the contract was invalid we need not decide. They do not contend in the present case that all payments due them in compliance with the provisions of the contract have not been made. To the contrary, they seek to assert that they should have received the royalty payments upon a different and higher percentage than that provided in the contract to which their rights were subject. There is no merit to the contention in the existing circumstances.

The allegations in the petition pertaining to the defendant, The Eagle-Picher Mining & Smelting Company, having improperly suspended mining operations at a time when the involved property could have been operated with profit to such defendant and consequent gain by the plaintiffs also prove to be without merit because the second amended petition does not set forth a cause of action predicated upon a breach of the contract. Such contract provides that "mining or milling shall be carried on in good faith continuously and shall not be suspended at any time to exceed ten days in any one calendar month without the written permission of the lessors." The lessors named in the contract were C. G. Lennan and her husband, T. F. Lennan. The plaintiffs' predecessor in title, Chubb, was not a lessor and was not given the privilege under the provisions of the contract to demand that the operators of the property continue to produce minerals from it. Moreover, the contract provided that the operators should not be obliged to mine or operate when either lead or zinc concentrates were worth in the Joplin

market less than thirty dollars per ton. The petition does not allege that the lessors named in the ·contract have objected to such suspension of operations thereunder or have not given written permission and does not allege that either lead or zinc concentrates were worth at the time the suspension occurred more than thirty dollars per ton in the Joplin market. Obviously, such allegations were not made because of the fundamental reason that the plaintiffs are not seeking to recover under the contract. They acquired no right under the conveyance made to them to require any of the defendants named in this action to continue operation of the property. Therefore, the petition does not state a cause of action in favor of the plaintiffs arising by reason of the suspension of operations. Many other contentions pertaining to the sufficiency of the allegations of fraud, laches and estoppel are asserted by the defendants in support of the demurrers. For the reasons given it is unnecessary that they be given consideration.

The rulings of the district court in sustaining the demurrers are affirmed.