(653 P.2d 1199)
No. 53,672

DOROTHY HARTMAN, Executrix of the Estate of Francis Leo Hart-
man, Deceased, a/k/a Frank Hartman and Charles E. Watson,
*Appellants and Cross-appellees,* v. ELSA E. NORDQUIST, a/k/a
Elsa M. Nordquist, a/k/a Elsie M. E. Nordquist, Carlos G.
Nordquist, a/k/a Carl G. Nordquist, a/k/a C. G. Nordquist, E.
M. E. Eggers, the unknown spouse of E. M. E. Eggers; the
unknown heirs, executors, administrators, devisees, trustees,
creditors & assigns of such of the defendants as may be
deceased; the unknown executors, administrators, devisees,
trustees, creditors, successors & assigns of such of the defend-
ants as are or were partners or in partnership; the unknown
guardians, conservators and trustees of such of the defendants
as are minors or are in anywise under legal disability, *Ap-
pellees and Cross-appellants.*

Opinion filed
November 24, 1982.

*Charles E. Watson,* of Wellington, for appellants and cross-appellees.

*William M. Ferguson,* of Ferguson & Doctor, of Wellington, for appellees and
cross-appellants.

*Harold A. Pfalzgraf,* of Wellington, guardian ad litem for appellee and cross-
appellant E. M. E. Eggers.

Before MEYER, P.J., ABBOTT and REES, JJ.

REES, J.: This is a quiet title action. Plaintiffs appeal from an
adverse summary judgment. We affirm.

The subject of this litigation is a quarter section of Sumner
County land Florence Sparr, a resident of the State of Washing-
ton, conveyed, subject to a reserved life estate, to E. M. E. Eggers
by a deed dated May 11, 1960, and recorded in Sumner County on
February 26, 1964. Sparr died intestate January 1, 1967.

Acquisition of the quarter section became an interest of Francis
Hartman in 1975. On his behalf, Charles E. Watson, Hartman's

lawyer, tried to locate Eggers purportedly to discuss the possibility of its purchase by Hartman. Watson's efforts proved futile; he could not find Eggers.

Incident to his search, Watson examined the record of the Washington administration of Sparr's estate. He found the names and addresses of Sparr's heirs and also determined the quarter section was not included in Sparr's probate estate.

Between November, 1975, and March, 1976, Hartman obtained from the Sparr heirs quitclaim deeds naming him as the grantee. Hartman then brought a quiet title action in Sumner County against both the known and the unknown heirs of Sparr; Eggers was not a party to the lawsuit. Default judgment was entered in favor of Hartman on April 12, 1976. Thereafter, Hartman gave Watson a quitclaim deed of an undivided one-half of the former's interest. Following that, Hartman, who has since died, and Watson filed this lawsuit against Eggers and her brother, C. G. Nordquist.

Plaintiffs claim that because of fraud the conveyance by Sparr to Eggers should be cancelled and set aside. The details of the purported fraud and the role or interest of Nordquist are presently immaterial. Eggers and Nordquist moved for summary judgment on multiple grounds. The trial judge granted summary judgment holding Hartman's acts violated public policy.

If the judgment of the trial court was correct for any reason, it will not be disturbed on appeal. *McClintock v. McCall,* 214 Kan. 764, 767, 522 P.2d 343 (1974); *Leaderbrand v. Central State Bank of Wichita,* 202 Kan. 450, 454, 450 P.2d 1 (1969). There is a reason summary judgment was correct other than violation of public policy. Plaintiffs have no standing to prosecute the claim they make.

Whether plaintiffs have standing to prosecute the claim they assert is controlled by the decisions of our Supreme Court in the cases of *Carithers v. Weaver,* 7 Kan. 110 (1871); *Gray v. Ulrich,* 8 Kan. 112 (1871); *Flick v. Murdock,* 115 Kan. 862, 225 Pac. 119 (1924); and *Johnson v. Allen,* 178 Kan. 348, 285 P.2d 764 (1955). Because statements in a judicial opinion or syllabus thereof must be read and interpreted in light of the issue involved and the facts giving rise to what is said (*Ellis v. Union Pacific R. R. Co.,* 231 Kan. 182, 185, 643 P.2d 158 [1982]; *McKinney, Administrator v. Miller,* 204 Kan. 436, 437, 464 P.2d 276 [1970]; *Ives v. Kansas*

*Turnpike Authority,* 184 Kan. 134, 144, 334 P.2d 399 [1959]; *Steck v. City of Wichita,* 182 Kan. 206, 209, 319 P.2d 852 [1958]; *State v. Six Slot Machines,* 166 Kan. 361, 365, 201 P.2d 1039 [1949]), we will let the language of these controlling opinions express their facts and holdings.

In *Carithers v. Weaver,* 7 Kan. at 118-120, an ejectment action, it is said:

"The [execution] sale to Elizabeth F. Weaver was made March 30th, 1863 . . . . Within one year . . . plaintiff paid . . . for the redemption of said property . . . . [Plaintiff] claimed title by virtue of a deed from Noble Carithers, the judgment-debtor, made intermediate the date of the judgment and the day of the sale. He was therefore the 'successor in interest of the judgment-debtor,' and entitled to redeem. Having performed all that the law required for the redemption of the property, all interest therein which [Elizabeth F. Weaver] acquired by the sale ceased. . . . There was some testimony . . . that the deed from Noble Carithers to plaintiff was made without consideration, and made for the purpose of defrauding the wife of the grantor. . . .

". . . Who can question the validity of a deed alleged to have been executed without consideration and with a fraudulent intent? That fraud in a deed may be shown, and, being shown, that it avoids the deed, is not a rule of universal application. . . . [O]ne who is without interest or equity in the conveyance, or the property conveyed, a mere stranger, cannot be heard to say there is fraud in the conveyance. In the plain and homely language of the day, 'it is none of his business.' Who then may question the validity of a deed alleged to have been executed with a fraudulent intent? Plainly, he who is injured by the fraud; he who has superior equities in the property conveyed. A deed, fraudulent as against creditors may be set aside by those creditors. . . . The only interest defendant Elizabeth F. Weaver ever had in the property . . . was that acquired by the sale on execution . . . . But that interest . . . was wholly destroyed by the redemption . . . . Thenceforth she had no interest in the property, no equities to enforce, was in fact a mere stranger. She therefore was in no position to question the validity of plaintiff's conveyance."

In *Gray v. Ulrich,* 8 Kan. at 120-122, a quiet title action, it is said and held:

"The petition was filed in the name of the executors [and the heirs] of Jacob Ulrich deceased as plaintiffs, alleging that said Ulrich died seized and possessed of certain tracts of land which he had obtained by deed from the heirs of John Hicks; that Gray and Miller had, prior to the date of that deed, obtained by false and fraudulent representations a conveyance from one of the [John Hicks] heirs of her interest in said land, and praying that said conveyance be set aside and cancelled. . . .

"[A] . . . fatal defect is in the petition; . . . upon its allegations neither the executors nor the [Ulrich] heirs were entitled to any relief. The petition shows that the land in controversy was sold and patented by the United States to

the heirs of John Hicks deceased; that Jane Hicks was one of those heirs; that on or about Dec. 21st, 1860, said Jane Hicks deeded her interest in the land to Miller and Gray; that on January 9th, 1862, she joined with the other [John Hicks] heirs in a deed of the premises to Ulrich. . . . [U]pon these facts it is plain that the deed to Ulrich, so far as Jane Hicks was concerned, carried nothing, as by her deed to Miller and Gray she had parted with all her interest. To avoid this necessary conclusion, and as furnishing grounds for relief, the petition further alleges that the deed to Miller and Gray . . . was without consideration [and] was obtained by false and fraudulent representations . . . . In regard to [those further allegations] while if true they might have given to Jane Hicks the right to have the deed avoided . . . this right was a personal one and did not pass to the grantee under any subsequent deed. The deed she had made was not void, but only voidable. She might proceed to have it set aside, or elect to affirm it. The petition does not show that she did either. She never having proceeded to set aside the deed, it is good as against Ulrich and his heirs. When Ulrich took his deed from her, he took nothing, not even the right to question any supposed fraud in her prior conveyance."

In our view, the substance of the decision in *Flick v. Murdock,* 115 Kan. at 863-867, is expressed in the following language from the opinion:

"This controversy involves the title and possession of certain real estate. An objection . . . on the ground that the petition failed to state facts sufficient to constitute a cause of action was sustained . . . .

"[T]he defendant [Fred L. Murdock] visited Jackson Flick . . . and procured from him a quitclaim deed for the land in controversy. The deed was executed April 1, 1919. The heirs of Jackson Flick (plaintiffs here) on June 2, 1919, procured a quitclaim deed from him for the land in question. In it he stated that any other purported conveyance from him was fraudulent and without consideration. This action was filed July 29, 1919. Jackson Flick died September 1, 1919. [He was not a plaintiff.]

"The [June 2, 1919] deed, 'Exhibit A,' . . . contained . . . the following:

" '. . . I do hereby declare and make known that, up to the execution and delivery of this instrument, I am and was the legal and true owner of said lands, and that any written contract, or instrument of conveyance, or any other writing purporting to convey or renounce my title or ownership in said lands . . . is false and fraudulent, and particularly any instrument, writing or conveyance procured from me . . . in favor of Fred L. Murdock . . . were wholly without any consideration and such as they were, were signed by me solely through the belief and impression created by them by statements theretofore made to me by them to procure such execution and which statement and fact I find wholly unconfirmed . . . and I do now abjure and repudiate the validity of any such conveyance as they may have induced me to execute with respect to this land.'

"It is contended by the defendant that, at the time of the execution of the deed by Jackson Flick to the plaintiffs, Jackson Flick had neither the title nor posses-

sion of the property; that the deed asserted no title on his part and did not purport to pass any title to the grantees (plaintiffs); that Jackson Flick, by such deed, gave only such rights as he had to the property; that the plaintiffs are subsequent grantees without prior equities in the land, and are not in position to question the consideration of the former deed; that one without a prior equitable right cannot question a conveyance made by his grantor on the grounds that a prior deed was procured by fraud.

. . . .
"In *Traer v. Clews,* 115 U.S. 528, 29 L.Ed. 467, it was held: Though an assignment of a mere right to file a bill for fraud committed upon the assignor is void, a conveyance of property is not void because the grantee may have to bring suit to enforce his right to the property conveyed.

. . . .
"[T]he plaintiffs took from Jackson Flick a quitclaim deed. This conveyed all of his interest . . . . He repudiated the conveyance to the defendant because it was procured through fraud and no consideration had been paid therefor.

. . . .
"[P]laintiffs were relying on two sources of title: one, upon the deed of June 2, 1919, the other, that they were the heirs of Jackson Flick. . . .
"In a note following *Warner v. Flack,* [278 Ill. 303], 2 A.L.R. 437, it is said:
" 'The right to cancel a deed obtained from a grantor by mistake, fraud, duress, or undue influence descends to the heir if it exists in the ancestor unimpaired at the time of his death.' "

## In *Johnson v. Allen,* 178 Kan. at 351-52, we find:

"[Plaintiffs'] original quiet title action [developed] into one to set aside and cancel a mineral deed [executed by Frank and his wife Mary on May 6, 1930, to the Royalty Company and Flag] on the ground of lack or failure of consideration . . . . It is evident [plaintiffs] cannot have their title quieted unless the mineral deed is set aside. [Plaintiffs] first acquired title by quitclaim deed from Frank on November 30, 1942, and the subsequent deeds of the heirs of Frank and Mary. They then acquired the title of the Royalty Company in and to its . . . ⅜ interest in the minerals by reason of the [Royalty Company's] receiver's deed to them on October 17, 1947. These deeds were subsequent in time and subject to the [May 6, 1930] mineral deed . . . .

. . . .
"What did [plaintiffs] get when they received the . . . deed[s] from Frank and the heirs of Mary and Frank? They received only that interest that was owned by their grantors. The same is true of the receiver's quitclaim deed of the Royalty Company's mineral interest. The [plaintiffs] could not have received title to [the] one half [of] the mineral rights at the time of their . . . deed[s] from Frank and the heirs of Frank and Mary because title to those mineral rights was in the Royalty Company and Flag . . . . Then upon receipt of the [Royalty Company's] receiver's quitclaim deed they could not have received any rights in the ⅛ interest because these rights were in Flag . . . . [Plaintiffs'] grantors could not convey to them by quitclaim deed something which they had previously conveyed by a mineral deed. If there was any right to have the mineral deed set aside it was in Frank and Mary and not in [plaintiffs]. There is no showing in the

record that Frank and Mary ever attempted to set aside the mineral deed. (*Gray v. Ulrich,* 8 Kan. 112.) [Plaintiffs] received only what their deeds granted them determinable by taking into account the mineral deed of Flag . . . . A grantor who has previously disposed of title in land cannot later transfer that title to a subsequent grantee."

We conclude that if after May 11, 1960, and during her lifetime Sparr had conveyed and assigned her interest to a second grantee without prior or contemporaneous action by her to set aside or in the nature of rescission, renunciation or repudiation of the earlier conveyance, the second grantee could not attack the earlier conveyance. If her second grantee could not, it follows that plaintiffs, representing the interest of Hartman, the grantee of her heirs, cannot where no such action by Sparr or her heirs in the nature of rescission, renunciation or repudiation of the earlier conveyance took place prior to or contemporaneous with the heirs' deeds. We need not and do not decide whether (1) the deeds from Sparr's heirs to Hartman were void, (2) the heirs could have maintained an action to set aside the deed to Eggers upon Sparr's death, or (3) if the latter is true, whether the heirs could have maintained an action to set aside the deed to Eggers when they gave their deeds to Hartman.

Affirmed.