(799 P.2d 105)
No. 64,713

Adam Wayne Gifford, *Appellant*, v. Farm Bureau Mutual Insurance Company, Inc., *Appellee*.

Opinion filed September 28, 1990.

*Cathleen M. Reeder*, of Bryan, Lykins, Hejtmanek & Wulz, P.A., of Topeka, for appellant.

*John D. Ensley* and *Arthur E. Palmer*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, for appellee.

*Timothy A. Short*, of Spigarelli, McLane & Short, of Pittsburg, *amicus curiae*.

*Gerald W. Scott*, of Wichita, for *amicus curiae* The Kansas Trial Lawyers Association.

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, of Topeka, for *amicus curiae* Gulf Insurance Company.

Before Lewis, P.J., Rees, J., and Sam K. Bruner, District Judge, assigned.

Rees, J.: This is an action initiated by plaintiff Adam Wayne Gifford against defendant Farm Bureau Mutual Insurance Company to recover benefits under underinsured motorist (UIM) coverage provided to him by a Farm Bureau automobile liability policy. It is a direct action in contract by an insured against his insurer. The only parties to the action are Gifford and Farm Bureau. The purported tortfeasor, Marty K. McAlexander, is not a party to the action. Neither Gifford nor Farm Bureau has brought or sought to bring McAlexander's liability insurer, Gulf Insurance Company, or any other person or entity, into the action as an additional party. No one has intervened or sought to intervene. There has been no trial. Gifford appeals from the trial

court's order dismissing the action against Farm Bureau. We reverse.

Underlying the action is a one-vehicle accident resulting in bodily injury to Gifford. The vehicle involved was driven by McAlexander. Gifford was a passenger. Gifford alleges that McAlexander was guilty of negligence and that McAlexander's negligence was the cause of the accident. Whether McAlexander was negligent and the amount of Gifford's damages are questions not yet adjudicated.

McAlexander is afforded liability coverage under an automobile liability policy issued by Gulf. The limit of Gulf's liability coverage is $50,000. The limit of Farm Bureau's UIM coverage is $100,000. Claiming that his damages exceed $50,000, Gifford seeks recovery against Farm Bureau for the amount of his bodily injury damages that are in excess of $50,000 but not to exceed Farm Bureau's $100,000 UIM coverage limit.

For present purposes, Gifford is a UIM insured; Farm Bureau is a UIM insurer; McAlexander is an underinsured tortfeasor; and Gulf is the tortfeasor's liability insurer.

Prior to his initiation of this action, Gifford gave notice to Farm Bureau that he had reached a tentative agreement with Mc-Alexander to settle for Gulf's liability limit. In the language of K.S.A. 1989 Supp. 40-284(f), the UIM insured (Gifford) reached a tentative agreement with the underinsured tortfeasor (Mc-Alexander) to settle for the tortfeasor's liability limit ($50,000). The UIM insured (Gifford) gave written notice of the tentative agreement to settle to his UIM insurer (Farm Bureau) in the manner and as prescribed by K.S.A. 1989 Supp. 40-284(f). The UIM insurer (Farm Bureau) did not substitute its payment to the UIM insured (Gifford) for the tentative settlement amount ($50,000) within 60 days of receipt of the written notice. In fact, Farm Bureau expressly declined to make substitute payment to Gifford. Thereafter, Gulf, on behalf of its insured (McAlexander, the underinsured tortfeasor), paid the full $50,000 limit of its liability coverage in exchange for Gifford's release of McAlexander and Gulf.

Assuming appropriate policy language, K.S.A. 40-287 and K.S.A. 1989 Supp. 40-284(f) operate to grant and assure to a UIM insurer the right of subrogation to any cause of action in tort

which a UIM benefits payee may have against any other person legally responsible for the bodily injury because of which payment of UIM benefits is made. The UIM insurer's subrogation right extends to the proceeds of any settlement resulting from the exercise of any rights of recovery by the UIM benefits payee against any person legally responsible for the bodily injury for which payment is made by the UIM insurer. The extent of the UIM insurer's subrogation right is limited to the amount of UIM coverage benefits paid to the UIM insured. However, as provided by K.S.A. 1989 Supp. 40-284(f), where a UIM insurer fails to make timely substituted payment in response to a notice of tentative agreement with a tortfeasor to settle for the tortfeasor's liability limit, the UIM insurer "has no right of subrogation for any amount paid under the [UIM] coverage."

The trial court refused to find that K.S.A. 1989 Supp. 40-284(f) authorizes a direct action by a UIM insured against its insurer. It held that K.S.A. 1989 Supp. 40-284(f) concerns only the subrogation rights of UIM insurers. We find K.S.A. 1989 Supp. 40-284(f) and K.S.A. 40-287 are unambiguous and we agree that, in an action involving UIM benefits, K.S.A. 1989 Supp. 40-284(f) concerns only the subrogation right of the UIM insurer.

The trial court order of dismissal was announced in the following language:

"Farm Bureau [a UIM insurer] asserts that it cannot be involuntarily named as a defendant in an underinsured motorist action. Farm Bureau asserts that plaintiff [the UIM insured] has not named the driver of the alleged underinsured vehicle [the underinsured tortfeasor] as a defendant as required by law, and that [a UIM] insurer may only become a defendant in an underinsured motorist action if the [UIM] insurer itself elects to intervene in an existing action brought by the injured party [the UIM insured] against the [underinsured] tortfeasor. Farm Bureau requests that the action brought by plaintiff be dismissed.

"The Court finds that Farm Bureau's motion to dismiss should be granted. In *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985), the Kansas Supreme Court set forth procedures to be followed in an underinsured motorist action. In *Haas*, the Supreme Court found that [a UIM insurer] cannot be involuntarily named as a defendant in an [underinsured motorist] action.

"Plaintiff argues that K.S.A. 40-284(f), which was enacted subsequent to the decision in *Haas*, authorizes direct actions against underinsured motorist carriers. However, the Court finds that K.S.A. 40-284(f) only concerns the

subrogation rights of underinsured carriers. The statute is not inconsistent with the decision in *Haas* and does not change existing law. Accordingly, the Court finds that the proper defendant is not named herein, and this action should be dismissed as against Farm Bureau."

Before us, Farm Bureau capsulizes its position in this language taken from its brief:

"Kansas law does not permit an injured party to initiate an action directly against the party's underinsured motorist carrier. The right to *intervene* in an existing action against the alleged [underinsured] tortfeasor is the exclusive right of the [UIM] insurer. Farm Bureau has been improperly named in this action as a defendant, and plaintiff has failed to sue the truly indispensable party to this action, the alleged [underinsured] tortfeasor. Accordingly, the district court was correct in dismissing plaintiff's action against Farm Bureau."

The foundation of Farm Bureau's position has been and is *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). Likewise, *Haas* was the foundation of the trial court's decision to dismiss. Thus, that opinion must be examined with care.

"[S]tatements in a judicial opinion or syllabus thereof must be read and interpreted in light of the issue involved and the facts giving rise to what is said (*Ellis v. Union Pacific R. R. Co.*, 231 Kan. 182, 185, 643 P.2d 158 [1982]; *McKinney, Administrator v. Miller*, 204 Kan. 436, 437, 464 P.2d 276 [1970]; *Ives v. Kansas Turnpike Authority*, 184 Kan. 134, 144, 334 P.2d 399 [1959]; *Steck v. City of Wichita*, 182 Kan. 206, 209, 319 P.2d 852 [1958]; *State v. Six Slot Machines*, 166 Kan. 361, 365, 201 P.2d 1039 [1949])." *Hartman v. Nordquist*, 8 Kan. App. 2d 213, 214-15, 653 P.2d 1199 (1982).

"What is said in an opinion or the syllabus thereof always is to be read and interpreted in the light of the facts and questions present in the case. [Citations omitted.] Otherwise, language meaningful for one case may erroneously become dogma for other cases despite essential differences. *McKinney, Administrator v. Miller*, 204 Kan. 436, 437, 464 P.2d 276 (1970)." *State v. Reed*, 8 Kan. App. 2d 615, 623-24, 663 P.2d 680 (Rees, J., dissenting and concurring), *rev. denied* 234 Kan. 1077 (1983).

*Haas*, 236 Kan. 677, was a tort action that came before the Supreme Court on interlocutory appeal. The factual and procedural background of *Haas* is described in the opinion as follows:

"[Defendant] Mark S. Freeman and [plaintiff] Harlan A. Haas were involved in an automobile accident with each other. As a result of the accident, Haas suffered physical injuries. Haas brought suit against Freeman for recovery of his damages.

"During the initial stages of the action, it was discovered Mark Freeman was an underinsured motorist. At the time of the accident, Freeman had

a policy of insurance with Farmers Insurance Company for automobile liability coverage . . . . At the time of the collision Haas had in effect an insurance policy with Horace Mann Insurance Company for [UIM] coverage . . . . Haas was granted a motion to amend his petition to bring suit against Horace Mann Insurance Company, contending Freeman was an underinsured motorist. Horace Mann filed a motion to be dismissed from this suit. The district court dismissed Horace Mann Insurance Company from the suit, but held it would be bound by any judgment rendered in the action above appellee Freeman's [liability] insurance limits." 236 Kan. at 678.

The Supreme Court determined that, in *Haas*, "[t]he primary issue raised by appellant's interlocutory appeal [was] whether a plaintiff's insurance company may be included in an action against a tortfeasor when the tortfeasor is an underinsured motorist." 236 Kan. at 678. In other words, the Supreme Court found the primary issue confronting it in *Haas* was whether a UIM insurer may be made, or included as, a named party *in an action prosecuted by a UIM insured against the underinsured tortfeasor*. That is *not* the primary issue in the present case. This is not an action brought by a UIM insured against the underinsured tortfeasor; it is an action brought by a UIM insured against its UIM insurer. That distinction flaws the vitality of *Haas* as controlling authority here.

In *Haas*, the Supreme Court observed that *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973), "stands for the proposition that a plaintiff may include his own insurance company in a suit against a tortfeasor where there is an issue of *uninsured* motorist coverage." (Emphasis added.) 236 Kan. at 680. It further observed it had noted in *Winner* that " '[m]ultiple litigation is never desirable and there is a public interest economically in avoiding it whenever possible to do so in a fair and workable manner.' 211 Kan. at 65." 236 Kan. at 682.

Nonetheless, the Supreme Court ultimately had this to say in *Haas*:

"We reiterate our previous conclusions in *Winner* that all issues in a lawsuit should be tried in one trial. Multiplicity of suits does not promote substantial justice. Thus, the issues in cases involving uninsured motorists and underinsured motorists should be tried in one lawsuit. However, we are persuaded underinsured motorist claims are sufficiently distinguishable from uninsured motorist claims to require different procedures." 236 Kan. at 682.

The "rule" of *Haas* is then pronounced as follows:

"[I]n an action involving an underinsured motorist, the parties shall proceed as follows:

"When the litigant determines the opposing party's liability coverage is below the litigant's liability coverage as well as the amount of damages claimed, and he wishes to invoke the underinsured motorist clause of his insurance policy, he shall notify his insurance carrier in the manner prescribed in the insurance policy.

"The insurance company may then intervene in the case at its election. If it elects to intervene, it shall be a named party to the action. If the insurance company elects not to intervene, K.S.A. 60-454 is applicable. In either case the litigant's underinsured motorist insurance carrier is bound by any judgment obtained in the action." 236 Kan. at 682-83.

We pause to consider that part of the *Haas* "rule" that reads "[i]f the [UIM insurer] elects not to intervene, K.S.A. 60-454 is applicable."

K.S.A. 60-454 provides that "[e]vidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible as tending to prove negligence or other wrongdoing." On its face, K.S.A. 60-454 does not proscribe the introduction into evidence of all evidence of liability insurance. The statute has limited applicability. It proscribes the use of evidence of liability insurance as proof of the insured tortfeasor's negligence or other wrongdoing. It does not exclude evidence of liability insurance where relevant upon an issue other than that of the insured's conduct. Advisory Committee Notes, 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-454, p. 188 (1979). It has been said that "evidence of insurance is inadmissible only 'as tending to prove negligence or wrongdoing.' Consequently, if relevancy can be justified on another basis, the exclusionary rule is discarded for lack of application." Slough, *Relevancy Unraveled,* 5 Kan. L. Rev. 675, 713 (1957).

We conclude that the appearance of the reference to K.S.A. 60-454 in the Supreme Court's exposition of the *Haas* "rule" demonstrates that the "rule," as expressed, is to be limited to *Haas'* factual framework. The *Haas* "rule" applies in those cases involving a claim for UIM benefits asserted incident to an action initiated by a UIM insured *against the underinsured tortfeasor.* In such a case, where the UIM insurer elects not to intervene,

K.S.A. 60-454 operates to exclude evidence of the underinsured tortfeasor's liability insurance as proof of the tortfeasor's negligence or other wrongdoing. That seems to be the construction adopted by the Notes of Decisions author in 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-454, p. 152 (1990 Supp.).

In the arguments made to us by the parties we are told that K.S.A. 1989 Supp. 40-284(f) was enacted to afford relief where an impasse arises in UIM claim settlement negotiations. It is asserted that with some frequency an impasse arises in catastrophic injury cases because the bodily injury claimant and UIM insured is unable to enter into settlement with the tortfeasor's liability insurer for payment of the liability insurer's limit without giving a full release to the tortfeasor and its liability insurer thereby "voiding" the claimant's UIM coverage upon the UIM insurer's assertion of its policy's coverage exclusion clause. The exclusion clause in Farm Bureau's policy here is in this simple language:

"**We** do not provide coverage under this Part [PART III - UNINSURED/ UNDERINSURED MOTORISTS] for **bodily injury** sustained by any person:
   1. If that person . . . accepts a settlement . . . for a **bodily injury** claim that prejudices **our** right to recover payment . . . ."

Although it appears from the record before us that Farm Bureau's exclusion clause would be operative because of Gifford's release of McAlexander and Gulf, we need not pursue the subject of policy "voidance" inasmuch as the subject is not material to our resolution of this appeal. Nonetheless, we note that Farm Bureau has not asserted reliance upon the exclusion clause as an affirmative defense. See generally *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 335, 681 P.2d 15 (1984); *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn*, 215 Kan. 937, 943, 529 P.2d 171 (1974); *Krug v. Millers' Mutual Insurance Ass'n*, 209 Kan. 111, 117-18, 495 P.2d 949 (1972). Further, if we were to pursue the subject, we would be confronted with the presently unaddressed question of whether enforcement of the exclusion clause would contravene public policy (see *Horace Mann Ins. Co. v. Ammerman*, 630 F. Supp. 114, 118 [D. Kan. 1986]).

We know of and have been referred to no statutory or case authority that supports Farm Bureau's broad assertion that an

injured party's initiation of an action directly against the party's underinsured motorist carrier is not permitted by Kansas law. The *Haas* "rule" does not support that proposition. It applies to an action prosecuted by a UIM insured against an underinsured tortfeasor. We are aware of no authority prohibiting a first-party action by a UIM insured against its UIM insurer.

We agree with Farm Bureau that the right of a UIM insurer to intervene in an existing action brought by a UIM insured against the alleged underinsured tortfeasor is the right of the UIM insurer. But the UIM insurer's right of *intervention* is not involved in the case before us. Here, the existing action is one brought by the UIM insured against the UIM insurer, not the alleged underinsured tortfeasor. Beyond that, neither voluntary intervention nor involuntary intervention (if there be such a creature) has been attempted or sought here.

Farm Bureau has not demonstrated impropriety in the naming of it as the defendant in this action. Neither have we been shown why it is that McAlexander, the underinsured tortfeasor, is an indispensable party to this action who must be sued by Gifford, the UIM insured. Although the question of McAlexander's negligence is one that must be adjudicated ultimately, Gifford is in no position to sue McAlexander. Having released McAlexander, Gifford has no actionable claim for relief against McAlexander. Because the release has been given, were Gifford's counsel to name McAlexander as a defendant, the propriety of her professional conduct would be open to question.

As established by *Winner*, recovery of benefits by an injured party may be sought by bringing a direct action against that party's uninsured motorist insurer. 211 Kan. at 65. Neither *Haas* nor Farm Bureau's arguments persuade us that the procedure is inapplicable in UIM litigation. *Haas* does no more than create a procedural variation from *Winner* where an action is initiated by a UIM insured against the underinsured tortfeasor.

It is clear to us that the *Haas* "rule" has been misapplied here.

It is suggested that, if this action proceeds in its present posture, a jury will be presented with a confusing panorama that "could so overemphasize the insurance feature of the lawsuit the real issues would become unimportant." *Haas*, 236 Kan. at 682.

There is no reason to suspect that a jury is incapable of following and will not follow proper and appropriate instructions. Pursuant to *Nail v. Doctor's Bldg., Inc.*, 238 Kan. 65, 66-68, 708 P.2d 186 (1985), and *Thomas v. Board of Trustees of Salem Township*, 224 Kan. 539, 551, 582 P.2d 271 (1978), Kansas juries are routinely instructed on the theory of comparative negligence and the effect of their answers. See PIK Civ. 2d 1990 Supp. 20.01. If in a comparative negligence case it is appropriate to instruct a jury as to the theory of comparative negligence and the effect of its answers, it strikes us that it is no less appropriate to instruct a jury on the several facets of a UIM claim and to expect the jury to return a proper verdict or answers to special questions. It must be assumed that a jury is reasonably intelligent. *Mackey v. Board of County Commissioners*, 185 Kan. 139, 150, 341 P.2d 1050 (1959).

We hold that the trial court's order of dismissal is erroneous. Reversed and remanded for further proceedings.